**Crystal Sue FAULKNER, Appellant–
Respondent,**

v.

**ST. LUKE'S HOSPITAL, Respondent–
Appellant, Treasurer of Missouri
Second Injury Fund, Respondent.**

**No. WD 49286.**

Missouri Court of Appeals,
Western District.

July 11, 1995.

---

Kevin M. McCormick, Kansas City, for respondent-appellant St. Luke's Hosp.

John B. Boyd, Kansas City, for appellant-respondent Faulkner

Sue Ann Sperry, Asst. Atty. Gen., Kansas City, for Respondent Treasurer of MO Second Injury Fund.

Before HANNA, P.J., and
BRECKENRIDGE and SMART, JJ.

SMART, Judge.

This worker's compensation case involves issues of liability, attorney's fees, and interest. Crystal Sue Faulkner ("claimant") appeals from that portion of the award of the Labor and Industrial Relations Commission ("the Commission") which limited claimant's attorney's fees to $30,000 and denied interest upon the unpaid accrued benefits. St. Luke's Hospital ("employer") and Fire & Casualty Insurance Company of Connecticut ("insurer") appeal from that portion of the award of the Commission denying apportionment of disability liability between employer and the Second Injury Fund ("SIF").

In 1976, claimant worked in the warehouse of a button distributor, B. Blumenthal Company. During that time, claimant underwent three back surgeries, including two laminectomies and a bilateral fusion. The surgeries were not the result of a work related injury. Claimant was unemployed for approximately two years following the surgeries. The record shows that claimant was released by her doctor at some date in 1977 or 1978. She was restricted from lifting objects in excess of 50 or 60 pounds. Claimant felt she could go back to work at the warehouse with some limitations, but instead, claimant decided to take advantage of an opportunity to retrain herself in a more skilled field. Claimant spent one of the two years that she was unemployed retraining to become a cardiovascular technician. Upon completion of her training, claimant worked as the manager of the electrocardiography department at Park Lane Medical Center from 1978 until 1985.

In 1985, claimant began working as a cardiovascular technician for employer. At St. Luke's, claimant worked ten hours a day when she started in 1985 until she was injured in 1987. Claimant's job with employer required substantial physical exertion, including assisting doctors in angioplasties and angiograms, assisting in taking x-rays, pushing diagnostic equipment, lifting patients, filling out reports, administering CPR, cleaning and stocking diagnostic equipment and administering medications to patients. With the exception of a back sprain in 1986, she did not miss time from work for the back related problem and was not prevented from

completing her job duties at St. Luke's. Furthermore, employer did not give claimant any less strenuous tasks because of her back. Claimant had only occasional back problems working as a cardiovascular technician and would use muscle relaxants when she did have discomfort. Claimant was able to delegate strenuous job duties to others in her department. Claimant's performance evaluations at both Park Lane and St. Luke's indicated satisfactory performance. Part of her job responsibilities included developing films of diagnostic or therapeutic procedures in a dark room located within the cardiovascular department. On July 2, 1987, at about 1:00 p.m., claimant reached above shoulder level to retrieve a box containing four one-gallon cartons of developing fluid. While reaching for the box, she turned to her side and twisted her lower and middle back. She felt an immediate strong, painful pulling and aching in her back. She reported the incident to her supervisor who referred her to the emergency room at St. Luke's. Claimant was diagnosed with an acute back strain.

After receiving medical treatment on a weekly basis for seven months, on February 1, 1988, claimant was released to return to work with limitations against repetitive heavy over-head lifting of objects in excess of forty pounds. Claimant returned to work for a period of less than two weeks. After experiencing increased pain and discomfort on a daily basis, she was unable to continue working. Six months later, claimant was diagnosed as having major depression.

Claimant filed a worker's compensation claim for her injuries against employer and the SIF. Three doctors testified by deposition that claimant had a preexisting permanent partial disability as a result of the surgeries. Dr. Lowry Jones, Jr., testified for employer and stated that claimant had a 20 percent body as a whole permanent partial disability attributable to her preexisting surgeries and that she sustained an 8 to 10 percent body as a whole permanent partial disability as a result of the July 2 low back sprain. Dr. Andrew Myers testified on behalf of claimant and stated that claimant's preexisting permanent partial disability resulting from the low back surgeries and fusion amounted to 40 to 45 percent of the body as a whole, and the permanent partial disability attributable to the July 2 injury was 30 to 35 percent of the body as a whole. Dr. Michael Poppa testified on behalf of the SIF and stated that claimant had a presumed disability of the body as a whole of 50 percent due to her previous three back surgeries and lumbar fusion, and as a result of her present injury, including the aggravation of her back condition resulting in a lumbar strain, claimant had an additional disability to the body as a whole of 10 percent.

After hearing claimant's case over a four day period and hearing testimony from three expert witnesses, the claimant and two other lay witnesses, and considering deposition testimony of six other expert witnesses, as well as, thirty-nine documentary exhibits, the Administrative Law Judge ("ALJ"): (1) ordered employer to afford permanent total disability compensation benefits to claimant; (2) ordered employer to furnish medical care and attention for lower back injury and an emotional injury; (3) denied apportionment of disability liability between employer and SIF; (4) denied interest upon the unpaid accrued benefits; and (5) capped claimant's attorney's fees at $30,000. Upon appeal by claimant and employer, the Commission affirmed the award of the ALJ on March 17, 1994. Claimant and employer both appeal.

*Liability of Employer/Second Injury Fund*

The sole issue raised by employer and insurer on appeal is that the Commission erred in awarding against the employer compensation due claimant for permanent total disability because the overwhelming weight of the evidence proves claimant had a preexisting industrial disability, which combined with the last injury to result in the permanent total disability.

This court may set aside an award of the Commission only if there is no substantial evidence to support it or it is clearly contrary to the overwhelming weight of the evidence. *Johnson v. City of Kirksville*, 855 S.W.2d 396, 398 (Mo.App.1993). The Commission is the judge of the credibility of witnesses. *Id.* In reviewing the Commission's award, this court must view the evi-

dence and legitimate inferences to be drawn therefrom in the light most favorable to the award. *Id.* Even if this court would have reached a different conclusion, it may not substitute its judgment on factual issues for that of the Commission. *Id.*

The term "industrially disabling" is a judicially created term used to limit the types of preexisting injuries that give rise to SIF liability. In Missouri, prior to the amendment of § 287.220, the SIF has been liable for a claimant's permanent total disability only if the preexisting permanent partial disability was related to disability to work. *Wilhite v. Hurd,* 411 S.W.2d 72, 77 (Mo. 1967). The term "industrially disabling" has been defined to mean "loss of earning capacity, rather than physical impairment as such." *Id.* Thus, the preexisting disability must be of such seriousness as to affect the claimant's employability or ability to perform work-related duties. Unfortunately, the judicially created term has been misinterpreted at times, depriving some claimants of SIF benefits because they have worked regularly, although in pain, and with limitations on their physical abilities. On June 21, 1993, the legislature amended § 287.220, providing that a preexisting permanent partial disability may induce SIF liability only if it is:

> [O]f such seriousness as to constitute a hindrance or obstacle to employment or to obtaining reemployment if the employee becomes unemployed, and the preexisting permanent partial disability, if a body as a whole injury, equals a minimum of fifty weeks of compensation or, if a major extremity injury only, equals a minimum of fifteen percent permanent partial disability. . . .

Section 287.220.1, RSMo1994.

In this case, the ALJ's decision was handed down before the amendments became effective and the Commission rendered its decision after the effective date of the amendment. The Commission did not apply the new statutory amendment. The Commission found that there was no basis for assessment of liability to the SIF based on medical testimony presented by Dr. Poppa, who opined that claimant did not, in his opinion, have an "industrial disability." The Commission relied on Dr. Poppa's testimony in finding that the SIF was not responsible for claimant's permanent total disability, even though there was evidence that would support a contrary conclusion. The Commission did not specifically find that claimant did not have an "industrial disability," but such finding is implicit from its award.

■ Article I, section 13 of the Missouri Constitution provides that no statute retrospective in its operation can be enacted. However, a statute dealing only with procedure or remedies, in contrast to a statute dealing with substantive rights, may be applied retroactively. *Vaughan v. Taft Broadcasting Co.,* 708 S.W.2d 656, 660 (Mo. banc 1986). Substantive laws generally fix and declare the primary rights of individuals concerning their person and property, and the remedy available in the case of invasion of those rights. *State ex rel. Webster v. Myers,* 779 S.W.2d 286, 289 (Mo.App.1989). Remedial laws are generally laws that affect only the remedy provided, including laws which merely substitute a new or more appropriate remedy for the enforcement of an existing right.[1] *Van Fossen v. Babcock & Wilcox Co.,* 36 Ohio St.3d 100, 522 N.E.2d 489, 497 (1988). Whether the instant statute and amendment are substantive or remedial is not readily discernable to this court. The statute has characteristics of both a substantive nature and a remedial nature. It is remedial to the extent that it remedies a defect in the common law by defining the terms used in the statute, which clarifies and replaces the judicial creation and interpretation of the phrase "industrially disabling." Yet, it is substantive in that it changes the standard for invoking SIF liability. Earlier

1. Remedial statutes have also been defined as: 1) laws that remedy defects in the common law, *Glover v. Colbert,* 210 Ga.App. 666, 437 S.E.2d 363, 365 (1993); 2) laws introducing a new regulation for the advancement of the public welfare or conducive to the public good, or one which supplies defects, and abridges superfluities in the former law, or one enacted to afford a remedy, *Lubbock Indep. School Dist. v. Bradley,* 579 S.W.2d 78, 80 (Tex.App.1979); and 3) laws that remove past disabilities in order to effect the true intent of the legislature, *Crowley v. City of Lafayette,* 602 So.2d 40, 44 (La.App.1992).

this year the Eastern District of this court, in *Leutzinger v. Treasurer of Missouri*, 895 S.W.2d 591 (Mo.App.1995) held that the amendment of § 287.220 was remedial and must be applied retroactively to all pending cases. The Eastern District handed down five subsequent cases following the *Leutzinger* analysis.

 On March 21, 1995, this court handed down a decision in this case, treating the amendments as substantive in contrast to the *Leutzinger* analysis. We affirmed the award of the Commission denying apportionment of disability liability between the employer and the SIF. Subsequent to that decision, the decision in *Leutzinger* became final when the application for transfer to the Missouri Supreme Court was denied. We granted rehearing to reconsider the decision in the light of *Leutzinger*. Now, after further consideration of *Leutzinger* and its progeny, which govern this very issue, we choose to follow its analysis. Applying the amended statute, we believe the facts of this case invoke SIF liability. We hold that the Commission should have applied the new standards as set forth by the legislature, instead of the old "industrially disabling" standard created by the courts. Accordingly, we reverse and remand this case to the Commission for reconsideration in accordance with the standards set forth in § 287.220.1, RSMo1994.

*Attorney's Fees*

Claimant raises two points on appeal. First, she claims that the Commission erred in its limitation of contingent attorney's fees by not permitting a fee equal in amount to 25 percent of all weekly compensation benefits allowed. In his order, the ALJ stated: "I find this award is subject to a lien in favor of John B. Boyd, attorney, for legal services rendered in the amount of $30,000.00 for services expended. Payment shall be made in a lump sum of 25 percent of sums now due and 25 percent of sums as they accrue not to exceed a total of $30,000.00." At a supplemental hearing conducted before the ALJ, after the issuance of the award, but before the application for review had been filed, the parties reappeared and counsel for claimant presented further evidence in support of counsel's request for a fee equal in amount to one-fourth of all compensation benefits awarded. The transcript of the hearing was forwarded to the Commission, and a copy was served upon the various parties, and is part of the file before this court. The ALJ then considered counsel's motion and allegedly attempted to enter a *nunc pro tunc* order where counsel for claimant would be allowed one-fourth of the compensation awarded up to a limitation of $60,000. The Commission, however, affirmed the award of attorney's fees in the original compensation award, allowing a fee of one-fourth of the recovery, up to $30,000.

 Appellant contends, first of all, that the attorney's fee limitation is invalid because the statutory provision (§ 287.260) allowing the Commission to regulate attorney's fees in cases before the Commission is unconstitutional in violation of Article II, § 1 and Article V, § 1 of the Missouri Constitution (providing for separation of powers and for the exercise of judicial power by the courts). Appellant lacks authority for this contention. Appellant also asserts an equal protection argument, citing a Texas case. We find these contentions to be without merit. Moreover, we conclude appellant lacks standing to raise these issues on appeal. Appellant cannot apply to the Commission for an award of attorney's fees, and then being dissatisfied with the award, contend that there was no authority for the award in the first place.

Appellant also argues that the Commission erred in failing to presume the validity of the attorney's fee agreement between attorney and client, without articulating some reasonable basis for substituting its own judgment in placing an arbitrary cap on the award. Appellant points out that the case involved considerable time and effort as shown by the fact that the case was tried for four days. Appellant also points out that the case involved nine expert witnesses altogether, and suggests that the amount of money at stake in the recovery (potentially over $600,000) warrants far better treatment on the issue of attorney's fees.

Section 287.260, RSMo1994 provides in pertinent part: "All attorney's fees for services in connection with this chapter shall be subject to regulation by the division or the commission and shall be limited to such charges as are fair and reasonable and the division or the commission shall have jurisdiction to hear and determine all disputes concerning the same." The Commission's decision regarding attorney's fees may be reversed only if it can be established, as a matter of law, that the allowance was so inadequate and so unreasonable to constitute an abuse of discretion. *Sanderson v. Producers Commission Ass'n*, 241 S.W.2d 273, 275 (Mo.App.1951). While the Commission could have been more generous with claimant's counsel, the standard by which we exercise review of this issue leaves us little room to "second guess" the Commission, especially when the record related to attorney's fees gives us no additional information beyond that recited above. We conclude that no abuse of discretion has been shown. Claimant's Point I is denied.

### Interest

Claimant next contends that the Commission erred in refusing to grant her unpaid interest compensation from the date of the injury, July 2, 1987, in that the amendment to § 287.160, effective August 28, 1990, should not be applied retrospectively. Claimant asserts that interest is due from the date when compensation benefits accrued in accordance with the 1986 version of § 287.160. The amendment of this section, effective August 28, 1990, changes the law so that interest begins accruing 30 days following the award of the ALJ instead of from the date on which the injury is sustained.

The case of *Croffoot v. Max German, Inc.*, 857 S.W.2d 435 (Mo.App.1993) is dispositive of this issue. In *Croffoot*, the claimant appealed the award issued by the Commission limiting interest awarded to that accrued from the time of the award. As here, Claimant Croffoot argued that the amendment to § 287.160 impaired a vested right, and thus, retroactive application violated the Missouri Constitution. The court in *Croffoot* stated:

A statute which affects only the procedure or remedy, however, will be applied retrospectively unless the legislature expressly states otherwise. Further, merely to label certain consequences as substantive and others as procedural is not sufficient; notions of justice and fair play in a particular case are always germane.

Prejudgment interest is a measure of damages for failure to pay money when payment is due. Thus, Section 287.160.3 does not define or regulate a claimant's right to compensation for injuries, but affects only the measure of damages in the enforcement of that right.

857 S.W.2d at 436 (citations omitted). The court affirmed the decision of the Commission, concluding that "since the amendment is remedial, the Commission correctly applied it retroactively." *Id.* Claimant's argument that *Croffoot* is an incorrect application of the law is not persuasive. Thus, the amended version of § 287.160.3 applies retroactively to the case at bar. The Commission did not err in its ruling. Claimant's Point II is denied.

The award of the Labor and Industrial Relations Commission is reversed and remanded.[2]

All concur.

---

**2.** Taken with the case was Respondent Second Injury Fund's motion to strike Appellant Faulkner's reply brief. The reply brief like the oral argument of Faulkner, strays from the points raised in her opening brief and addresses the issue of the liability of the Second Injury Fund as opposed to the liability of the employer. We conclude that the motion of Respondent Second Injury Fund is well taken, and we hereby grant the motion to strike Appellant Faulkner's reply brief.