**Fred C. FLETCHER, Appellant,**

v.

**SECOND INJURY FUND, Treasurer of Missouri, Respondent.**

No. WD 51760.

Missouri Court of Appeals, Western District.

April 9, 1996.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 28, 1996.

Kenneth C. Hensley, Hensley & Hensley, Raymore, for appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Jefferson City, Randell Collins, Assistant Attorney General, Kansas City, for respondent.

Before ULRICH, P.J., and BRECKENRIDGE and SMITH, JJ.

ULRICH, Presiding Judge.

Mr. Fletcher appeals the order of the Labor and Industrial Relations Commission adopting the administrative law judge's finding of partial permanent disability and determining that Section 287.220 RSMo 1993 should be applied retroactively. He claims the commission erred 1) in applying section 287.220.1 RSMo retroactively to his claim; 2) in applying the minimum standard set forth in section 287.220.1 RSMo to the second injury alone; and 3) in denying an award of permanent total disability.

The judgment is affirmed in part, reversed in part and remanded.

Mr. Fletcher suffered his first work related injury on November 21, 1986, while working at a golf course. He sustained a herniated disk at the L4–5 disk interspace which required surgery. Dr. Lowery Jones released Mr. Fletcher back to work April of 1990 with a permanent partial rating of 22% of the whole body. Mr. Fletcher was given work restrictions including single lift limit of 50 pounds and repetitious lifting restrictions of 35 pounds. Dr. Jones specified that Mr. Fletcher should not do any repetitive bending or lifting.

Mr. Fletcher was again injured on October 15, 1992, while working at WalMart as a mechanic. Dr. Jones conducted a clinical examination and concluded that Mr. Fletcher had suffered further injury to his L5 nerve root known as "traumatic nerve root injury." Dr. Jones further noted that claimant showed evidence of injury to his right sacroiliac joint and diagnosed the condition as being that of radiculopathy of the right leg.

Mr. Fletcher filed a claim for compensation from the employer and the Second Injury Fund on March 25, 1993. Mr. Fletcher settled with the employer on July 25, 1994, for 9.75% permanent partial disability to the body as a whole. He then sought permanent total disability compensation from the Second Injury Fund. The matter was tried before the Administrative Law Judge (ALJ) on November 1, 1994. The ALJ awarded permanent partial disability compensation from the Second Injury Fund. The judge found that Mr. Fletcher had incurred a permanent partial disability of 9.75% of the body as a whole from the second injury (the WalMart injury) and that he had a preexisting permanent partial disability of 22% to the body as a whole from the prior work related injury. The ALJ ordered the Second Injury Fund to pay Mr. Fletcher $3,575.70.

On appeal, the Labor and Industrial Commission affirmed the ALJ's denial of permanent total disability compensation but reversed the ALJ's award of permanent partial disability from the Second Injury Fund be-

cause the last injury was insufficient to meet the 12.5% threshold requirement set forth in section 287.220 RSMo 1994.[1] Mr. Fletcher appeals the Commission's findings.

## I. TOTAL PERMANENT DISABILITY

█ Mr. Fletcher asserts that the commission erred in denying an award of permanent total disability from the Second Injury Fund because the overwhelming weight of the evidence demonstrated that no employer in the usual course of business would reasonably be expected to employ Mr. Fletcher in his present physical condition, and he is therefore permanently totally disabled.

█ The term total disability means the inability to return to any employment and not merely the inability to return to the employment in which the employee was engaged at the time of the accident. Section 287.020.7 RSMo (1993). The test for permanent total disability in Missouri is "the worker's ability to compete in the open labor market in that it measures the worker's prospect for returning to employment." *Patchin v. Nat'l Super Markets, Inc.,* 738 S.W.2d 166, 167 (Mo.App.1987). The question then becomes whether an employer in the usual course of business would reasonably be expected to hire the claimant in the claimant's physical condition, reasonably expecting the claimant to perform the work for which he or she is hired. *Reiner v. Treasurer of State of Missouri,* 837 S.W.2d 363 (Mo.App.1992).

The standard of review of the commission's finding is explicitly set forth in *Davis v. Research Medical Center,* 903 S.W.2d 557, 571 (Mo.App.1995). The court in Davis summarized that:

> The reviewing court may not substitute its judgment on the evidence for that of the Commission. The weight of the evidence and the credibility of witnesses are ultimately for the Commission. The court applies a two step process designed to determine whether the Commission could have reasonably made its findings and award upon consideration of all the evi-

1. On June 21, 1993, the Missouri General Assembly revised Section 287.220 RSMo to contain minimum threshold requirements necessary for a recovery from the Second Injury Fund.

dence before it. In the first step, the court examines the whole record, viewing the evidence and all reasonable inferences drawn therefrom in the light most favorable to the award, to determine if the record contains sufficient competent and substantial evidence to support the award. If not, the Commission's award must be reversed. If there is competent and substantial evidence supporting the award, the court moves to the second step, where it views the evidence in the light most favorable to the award, but must consider all evidence in the record, including that which opposes or is unfavorable to the award, take account of the overall effect of all of the evidence, and determine whether the award is against the overwhelming weight of the evidence.

*Id.* at 571.

The ALJ considered ten factors relevant in determining whether a claimant is permanently and totally disabled. These include: the claimant's age, education, physical condition as it affects ability to work, the claimant's occupational history, the claimant's job skills, pain experienced by the claimant in performing basic life activities, claimant's own opinions regarding the capacity to return to employment, expert medical opinions regarding the claimant's capacity to return to work, expert vocational opinions regarding the claimant's ability to compete in the labor market and any history of employment of the claimant following an allegedly permanently and totally disabling accident.

Substantial competent evidence was presented to support the ALJ's decision adopted by the commission. The claimant is thirty years old. He has successfully completed high school and graduated with honors from the Electronics Institute. Mr. Fletcher has incurred substantial injury to his back. Although he and his doctor testified as to his limitations and the pain that he still experiences, Mr. Fletcher's medical expert, Dr. Jones, testified that Mr. Fletcher is capable of working if an employer accommodates his restrictions.

■ Mr. Dreiling, claimant's vocational expert, opined that Mr. Fletcher was not employable and would not be able to compete for any job in the open labor market. However, the ALJ noted that Mr. Dreiling had not performed any vocational or intelligence testing to substantiate his opinion. The commission is the judge of the credibility of a witness. *Faulkner v. St. Luke's Hosp.*, 903 S.W.2d 588, 591 (Mo.App.1995). Dr. Kopriviaca testified that Mr. Fletcher was not permanently and totally disabled. The existence of evidence to support a finding of a higher degree of impairment does not require reversal. *Lawrence v. Joplin R–VIII School Dist.*, 834 S.W.2d 789, 795 (Mo.App.1992). The commission's decision that Mr. Fletcher was not permanently and totally disabled was not against the substantial weight of the evidence. The finding of partial permanent disability is affirmed.

## II. RETROACTIVE APPLICATION OF 287.220.1 RSMo

■ Mr. Fletcher asserts that the commission erred in retroactively applying the 1993 amendment to section 287.220.1 RSMo in that the statute substantively changed the law regarding Second Injury Fund liability. The ALJ found Mr. Fletcher suffered an additional permanent partial disability as a result of the October 15, 1992, accident and ordered the Second Injury Fund to pay $3,575.70. The award was entered on January 30, 1995. The commission on an application for review determined that Mr. Fletcher was not entitled to compensation from the Second Injury Fund.

The Commission based its decision on the recent opinion by the Eastern District in *Leutzinger v. Treasurer*, 895 S.W.2d 591(Mo.App.1995), handed down January 31, 1995. *Leutzinger* determined that the amended statute was remedial and should be applied retroactively. *Id.* The commission, therefore, denied Second Injury Fund liability because Mr. Fletcher's last injury did not meet the statutory threshold required by the new statute.

The pertinent part of the statute as it existed at the time Mr. Fletcher was injured stated:

All cases of permanent disability where there has been previous disability shall be

compensated as herein provided. Compensation shall be computed on the basis of the average earning at the time of the last injury. If any employee who has a permanent partial disability whether from compensable injury or otherwise, receives a subsequent compensable injury resulting in additional permanent partial disability so that the degree or percentage of disability caused by the combined disabilities is greater than that which would have resulted from the last injury, considered alone and of itself, and if the employee is entitled to receive compensation on the basis of the combined disabilities, the employer at the time of the last injury shall be liable only for the degree or percentage of disability which would have resulted from the last injury had there been no preexisting disability. After the compensation liability of the employer for the last injury, considered alone, has been determined by an administrative law judge or the commission, the degree or percentage of employee's disability that is attributable to all injuries or conditions existing at the time of the last injury was sustained shall then be determined by that administrative law judge or by the commission and the degree or percentage of disability which existed prior to the last injury plus the disability resulting from the last injury, if any, considered alone, shall be deducted from the combined disability, and compensation for the balance, if any, shall be paid out of a special fund known as the second injury fund, hereinafter provided for.

Section 287.220.1 RSMo (1992).

Under this version of the statute the employee could settle with the employer on the primary injury and then proceed against the Second Injury Fund. If the commission found that the preexisting injury was industrially disabling and combined with the primary injury to result in a greater disability than the primary injury caused alone, an award from the Second Injury Fund was appropriate.

The relevant portion of the statute following the 1993 amendment reads:

1. All cases of permanent disability where there has been previous disability shall be compensated as herein provided. Compensation shall be computed on the basis of the average earning at the time of the last injury. If any employee who has a preexisting permanent partial disability whether from compensable injury or otherwise, of such seriousness as to constitute a hindrance or obstacle to employment or to obtaining reemployment if the employee becomes unemployed, and the preexisting permanent partial disability, if a body as a whole injury, equals a minimum of fifty weeks of compensation or, if a major extremity injury only, equals a minimum of fifteen percent permanent partial disability, according to the medical standards that are used in determining such compensation, received a subsequent compensable injury resulting in additional permanent partial disability so that the degree or percentage of disability, in an amount equal to the minimum of fifty weeks compensation, if a body as a whole injury or, if a major extremity injury only, equals a minimum of fifteen percent permanent partial disability, caused by the combined disabilities is substantially greater than that which would have resulted from the last injury, considered alone and of itself, and if the employee is entitled to receive compensation on the basis of the combined disabilities, the employer at the time of the last injury shall be liable only for the degree or percentage of disability which would have resulted from the last injury had there been no preexisting disability. After the compensation liability of the employer for the last injury, considered alone, has been determined by an administrative law judge or the commission, the degree or percentage of employee's disability that is attributable to all injuries or conditions existing at the time the last injury was sustained shall then be determined by that administrative law judge or by the commission and the degree or percentage of disability which existed prior to the last injury plus the disability resulting from the last injury, if any considered alone, shall be deducted from the combined disability and compensation for the balance, if any, shall be paid out of a special fund known as the

second injury fund, hereinafter provided for.

Under the current statute, Second Injury Fund liability does not exist unless both the preexisting and primary injury each meet the equivalent of a 12.5% permanent partial disability threshold, and the combination of the disabilities is synergistically substantially greater than the simple sum.[2]

The court in *Leutzinger*, the opinion controlling the commissions's decision, determined that the commission had erred in interpreting and applying the law by using the "industrial disability" standard instead of amended section 287.220.1 RSMo 1993 which made clear which preexisting conditions would be considered serious enough to trigger the statute. *Leutzinger* at 594. The court found the amendments remedial, and, therefore, applied retroactively to pending cases. *Id.*

■ *Leutzinger* and the opinions that have followed relate to a different provision of the amendment then the one at issue here. The provision in *Leutzinger* clarified the definition of a preexisting injury as required for Second Injury Fund liability.[3] In the present case, the issue is one of application of threshold minimum requirements of disability for recovery which did not exist prior to the amendment.

Article I, § 13 of the Missouri constitution provides:

That no ex post facto law, nor law impairing the obligation of contracts, or retrospective in its operation, or making any irrevocable grant of special privileges or immunities can be enacted.

There are two exceptions to the rule that a statute shall not be applied retrospectively. First, where the statute is only procedural and does not affect any substantive right of the parties and, second, where the legislature manifests a clear intent for retrospective application. *Gershman Investment Corp. v. Duckett Creek Sewer Dist.*, 851 S.W.2d 765 (Mo.App.1993). No clear manifestation within the amended statute for a retrospective application exists, and, therefore, the first exception is the focus of this case. If the statute affects substantive rights then retrospective application violates the constitution.

This court recently addressed the statute's affect on the standard for determining when preexisting injuries results in Second Injury Fund liability.[4] In determining whether the statute should be applied retrospectively, this court stated, "whether the instant statute and amendment are substantive or remedial is not readily discernable to this court. The statute has characteristics of both a substantive nature and a remedial nature." *Faulkner v. St. Luke's Hospital*, 903 S.W.2d 588, 592 (Mo.App.1995).

■ The distinction between substantive and procedural law is that substantive law relates to the rights and duties giving rise to the cause of action, while procedural law is the machinery used to effect the suit. *Wilkes v. Missouri Highway and Transp. Com'n*, 762 S.W.2d 27, (Mo. banc 1988). Substantive statutes take away or impair vested rights acquired under existing law, or create a new obligation or impose a new duty. *Brennecka v. Director of Revenue*, 855 S.W.2d 509, 511 (Mo.App.1993).

2. Mr. Fletcher also asserts in an alternative argument that the 50/15 minimum threshold does not apply to the second injury alone but rather to the combined effect of the first and second injury. His analysis is not correct. The statute requires that the preexisting injury and the present injury meet the threshold requirements. Once the thresholds are met, the combination of the disabilities must be synergistically substantially greater than their simple sum. This argument is not addressed fully because the retrospective application of the statute is dispositive.

3. *Leutzinger* and its progeny held that the judicially constructed "industrial disability" was su-

perseded by the amendment that provided the second injury fund liable if the preexisting injury is one of such seriousness as to constitute a hindrance or obstacle to employment or to obtaining reemployment if the employee becomes unemployed. It is this definition which the court reasoned applied retrospectively.

4. The Western District granted rehearing in *Faulkner v. St. Luke's Hospital*, 903 S.W.2d 588 (Mo.App.1995), after the *Leutzinger* case was decided by the Eastern District. The Western District had originally determined that the statutory change was substantive in nature.

Prior to the amendment in 1993, to effect a recovery from the second injury fund the claimant was required to show that he had sustained a subsequent compensable injury and that the degree or percentage of his overall disability caused by the combination of the first and second injuries was greater than that which would have resulted from the sum of the separate injuries. No threshold 12.5% disability standard had to be met before recovery was permitted.

When Mr. Fletcher incurred his injury on October 15, 1992, he would have been able to recover from the Second Injury Fund under the law as it existed when his claim arose. Mr. Fletcher settled with the employer for an amount equal to 9.75% permanent partial disability and was proceeding to recover from the Second Injury Fund, as allowed by law at the time. Although the Commission believed itself compelled to follow *Leutzinger*, it stated "this is one more disturbing example how the retroactive application of the 1993 amendment to 287.220 RSMo, as mandated by Leutzinger, supra, denies a claimant a vested right possessed under the Worker's Compensation Law as it exited at the time of the injury." Fletcher, 8 MOWCLR 1030 (1995). This is the exact circumstance prohibited by Article I, section 13 of the Missouri Constitution.

An identical situation has been encountered by the Southern District. In *Smart v. Missouri State Treasurer*, 916 S.W.2d 367 (Mo.App.1996), the claimant had suffered a work related injury in 1991 and sought additional benefits from the Second Injury Fund for the combined permanent disabilities resulting from the current and previous injuries. The claimant had settled with the employer for 10% disability of his left wrist and was denied his Second Injury Fund claim because of the retroactive application of the minimum 15% permanent partial disability to a major extremity requirement. The Southern District held that the 1993 amendment that sets a threshold disability a current injury must meet before invoking Second Injury Fund liability is substantive rather than remedial and that its use by the commission was an erroneous application of law. This court agrees.

In worker's compensation cases, the law is to be broadly and liberally interpreted with a view to the public interest. *Wolfgeher v. Wagner Cartage Service, Inc.* 646 S.W.2d 781, 783 (Mo. banc.1983). Any doubt as to the right of an employee to compensation is resolved in favor of the injured employee. *Id.*

The amendment to the statute contained both substantive and remedial changes. While the previous courts have found the replacement for the "industrially disabling" standard to be remedial, the inclusion of the 12.5% minimum permanent partial disability threshold is substantive. It should not be applied to injuries incurred before the effective date of the 1993 amendment. Mr. Fletcher had a vested right of recovery when he was injured that cannot be taken away by the retrospective application of the 1993 amendments to the statute.

The award denying recovery from the Fund is reversed, and the case is remanded for further consideration consistent with this opinion.

All concur.