Janet SMITH, Employee/Respondent,

v.

TIGER COACHES, INC.,
Employer/Appellant–
Respondent,

and

Insurance Company of the State of Pennsylvania, c/o AIG Claim Services, Insurer/Appellant–Respondent,

and

Travelers Insurance Company,
Insurer/Respondent.

No. ED 79311.

Missouri Court of Appeals,
Eastern District,
Division Two.

Feb. 26, 2002.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 8, 2002.

Application for Transfer Denied
May 28, 2002.

Mark A. Cordes, Moser & Marsalek, P.C., St. Louis, MO, for appellant.

Law Offices of Robert J. Hayes, Stephen H. Larson, Atty., for Tiger Coaches and Travelers.

David G. Plufka, Keefe & Griffiths, P.C., St. Louis, MO, for respondent Tiger Coaches and AIG.

MARY K. HOFF, Judge.

Tiger Coaches, Inc. (Employer) and Insurance Company of the State of Pennsylvania, c/o AIG Claim Services (AIG) appeal the temporary or partial award of the Labor and Industrial Relations Commission (Commission) which, in relevant part, found Employer and AIG liable to pay disability benefits to Janet Smith (Employee) who was found to suffer from bilateral carpal tunnel syndrome caused by her employment with Employer. We affirm.

Travelers Insurance Company (Travelers) insured Employer until February 15, 1999, and AIG insured Employer thereafter.

Employee worked for Employer from November 1998 through May 5, 1999. Employee drove buses for the first three weeks and then washed buses for the remainder of that employment. In January or February 1999, Employee began experiencing pain in her arms and hands.

On March 10, 1999, Employee fell while at work, sustaining injuries.[1] She made no complaints regarding her hands while getting medical care after this fall. She missed one week of work and was on light duty for two weeks as a result of this accident.

On May 5, 1999, Employee terminated her employment with Employer because her hands hurt too much.

In June 1999, Dr. R. Jerome Williams, Sr., examined Employee and diagnosed bilateral carpal tunnel syndrome. Dr. Raymond Cohen, a neurologist, examined Employee and stated she had bilateral carpal tunnel syndrome and should be evaluated by a hand surgeon for consideration of bilateral carpal tunnel releases. In August 2000, Dr. Cohen examined Employee again, noted she was still in need of treatment for bilateral carpal tunnel syndrome, and put her on restricted activities.

In March 2000, Employee filed a workers' compensation claim stating the date of the carpal tunnel syndrome was "thru 1/15/99." Employee subsequently amended her claim to state the carpal tunnel syndrome began March 12, 1999.

At a hearing before an Administrative Law Judge (ALJ) the Employee testified, presented the deposition testimony of Dr. Cohen, and introduced certain medical and wage records. Employer, Travelers, and AIG introduced the original claim for compensation, as well as certain medical and payroll records, and did not present any witnesses, in person or by deposition. The ALJ awarded Employee benefits upon finding: Employee had carpal tunnel syndrome causally related to her work and having an onset date of January 1999; Employer was liable for those benefits; and AIG was liable because the date the original claim was filed, the date Employee left her employment, and the date the carpal tunnel syndrome was first diagnosed all fell within the period of AIG's coverage. The ALJ further found AIG liable, even if the three-month exception in Section 287.067.7 RSMo 1994[2] applied, because AIG provided coverage on the date

---

1. This claim is settled and not before us.

2. Unless otherwise noted, subsequent statutory citations are to RSMo 1994.

of diagnosis in June 1999. The ALJ included benefits for future medical care based on Dr. Cohen's testimony of Employee's need for additional medical care, as well as Employee's testimony she wanted treatment and has continuing complaints of pain and loss of grip. The ALJ calculated the weekly compensation rate was $255.51 for temporary total disability (TTD) and permanent partial disability (PPD), with Employee entitled to TTD benefits from "September 27, 1999 ... through the present time" because Employee's "complaints are dramatic and her restrictions would effectively prevent her from competing in the open labor market." Finally, the ALJ determined a discussion of permanent disability was premature because Employee was "not yet at maximum medical improvement," and Employee's attorney was entitled to a 25% fee on all benefits awarded.

The Commission affirmed and adopted the ALJ's decision, with a change in the date of the onset of the carpal tunnel syndrome from January 1999 to March 12, 1999. This appeal followed.

Employer and AIG raise four points.[3] In their first three points, Employer and AIG contend the Commission erred by making certain decisions that were against the overwhelming weight of the evidence. First, Employer and AIG argue, the Commission erroneously concluded that Employee suffers from bilateral carpal tunnel syndrome medically causally related to her employment with Employer because Employee did not prove either that she suffers from that syndrome or that any condition involving her hands was related to her employment. Second, Employer and AIG urge the Commission erroneously decided Employer and AIG were liable for future medical treatment, because the substantial, competent evidence supports a determination Employee was not entitled to medical treatment in that she did not suffer from a compensable occupational disease. In their third point, Employer and AIG argue the Commission erred in awarding TTD benefits from September 27, 1999, through the present because the substantial, competent evidence supports a conclusion Employee was unable to work due to medical conditions unrelated to the bilateral carpal tunnel syndrome. In their fourth point, Employer and AIG contend the Commission's finding that AIG was the liable insurer was against the overwhelming weight of the evidence and was contrary to law because the substantial, competent evidence supports a finding that Travelers is the liable insurer. Because these points challenge liability for the temporary or partial award, rather than the amount or content of that award, we have jurisdiction to consider this appeal. *See, e.g., Sanderson v. Porta–Fab Corp.*, 989 S.W.2d 599, 603 n. 3, 605 (Mo.App. E.D. 1999).

We may modify, reverse, or set aside the Commission's decision, or remand for a rehearing, only if the Commission acted without or in excess of its authority, if the award was procured through fraud, if the award is not supported by the facts found by the Commission, or if there is insufficient competent evidence in the record to support the award. Section 287.495.1 RSMo 2000; *Chatmon v. St. Charles County Ambulance Dist.*, 55 S.W.3d 451, 454–55 (Mo.App. E.D.2001). We may set aside a Commission decision that is contrary to the overwhelming weight of the evidence. *Chatmon*, 55 S.W.3d at 455. Importantly, the weight of

---

**3.** Employer and its first insurer, Travelers, agree with the first three points and disagree with the fourth point.

the evidence does not refer to the quantity or amount of evidence but to the probative value of the evidence. *Id.* When reviewing the Commission's factual findings, we must ascertain whether the findings are supported by substantial evidence, after considering all the evidence in a light most favorable to the Commission's award. *Id.* "The Commission determines the credibility of the witnesses and may disbelieve the testimony of a witness even if no contradictory or impeaching evidence is adduced." *Smart v. Chrysler Motors Corp.,* 851 S.W.2d 62, 64 (Mo.App. E.D.1993). We also defer to the Commission's decisions regarding the weight given to witnesses' testimony, and are bound by the Commission's factual determinations when the evidence supports either of two opposed findings. *Chatmon,* 55 S.W.3d at 455–56. We review the Commission's resolution of questions of law *de novo. Messex v. Sachs Elec. Co.,* 989 S.W.2d 206, 210 (Mo.App. E.D.1999).

For their first point, Employer and AIG urge the Commission's conclusion that Employee suffers from bilateral carpal tunnel syndrome medically causally related to her employment with Employer was against the overwhelming weight of the evidence because Employee did not prove either that she suffers from bilateral carpal tunnel syndrome or that any condition involving her hands was related to her employment. In support of this point, Employer and AIG first argue that, while two physicians made the diagnosis, neither of those physicians used "electrical studies" to confirm the diagnosis, and the award ignored the inconsistencies between Employee's testimony and the medical records regarding when Employee complained about her hands. Second, Employer and AIG contend Employee failed to establish the syndrome was medically causally related to her employment due to the mentioned inconsistencies and the ab-

sence of "abnormal findings upon physical examination of [Employee's] hands." Additionally, Employer and AIG argue Dr. Cohen's opinion that Employee's syndrome was related to her employment with Employer lacks weight because Dr. Cohen did not observe Employee working and did not have details about the amount of force required in her job or the amount of time she spent performing the different aspects of her job.

Section 287.067.2 provides that "[a]n occupational disease is compensable if it is clearly work related and meets the requirements of an injury which is compensable as provided in subsections 2 and 3 of section 287.020. An occupational disease is not compensable merely because work was a triggering or precipitating factor." Section 287.020 provides in relevant part:

2. The word "accident" as used in this chapter shall, unless a different meaning is clearly indicated by the context, be construed to mean an unexpected or unforeseen identifiable event or series of events happening suddenly and violently, with or without human fault, and producing at the time objective symptoms of an injury. An injury is compensable if it is clearly work related. An injury is clearly work related if work was a substantial factor in the cause of the resulting medical condition or disability. An injury is not compensable merely because work was a triggering or precipitating factor.

3. (1) In this chapter the term "injury" is hereby defined to be an injury which has arisen out of and in the course of employment. The injury must be incidental to and not independent of the relation of employer and employee. Ordinary, gradual deterioration or progressive degeneration of the body caused by aging shall not be compensable, except

where the deterioration or degeneration follows as an incident of employment.

(2) An injury shall be deemed to arise out of and in the course of the employment only if:

(a) It is reasonably apparent, upon consideration of all the circumstances, that the employment is a substantial factor in causing the injury; and

(b) It can be seen to have followed as a natural incident of the work; and

(c) It can be fairly traced to the employment as a proximate cause; and

(d) It does not come from a hazard or risk unrelated to the employment to which workers would have been equally exposed outside of and unrelated to the employment in normal nonemployment life;

(3) The terms "injury" and "personal injuries" shall mean violence to the physical structure of the body and to the personal property which is used to make up the physical structure of the body, such as artificial dentures, artificial limbs, glass eyes, eyeglasses, and other prostheses which are placed in or on the body to replace the physical structure and such disease or infection as naturally results therefrom. These terms shall in no case except as specifically provided in this chapter be construed to include occupational disease in any form, nor shall they be construed to include any contagious or infectious disease contracted during the course of the employment, nor shall they include death due to natural causes occurring while the worker is at work.

█ An employee seeking workers' compensation benefits for an occupational disease must present "substantial and competent evidence that he [or] she has contracted an occupationally induced disease rather than an ordinary disease of life." *Kelley v. Banta & Stude Constr. Co.*, 1 S.W.3d 43, 48 (Mo.App. E.D.1999). Notably, carpal tunnel syndrome is a known occupational disease. *Wiele v. National Super Mkts.*, 948 S.W.2d 142, 146 (Mo.App. E.D.1997). The employee must also establish, usually through medical testimony, the probability that the occupational disease was caused by workplace conditions. *Kelley*, 1 S.W.3d at 48. Questions regarding causation are issues of fact for the Commission. *Sanderson*, 989 S.W.2d at 603.

█ As Employer and AIG acknowledge, two doctors, Dr. Williams and Dr. Cohen, diagnosed Employee as having bilateral carpal tunnel syndrome, and these diagnoses were not contradicted. The record reveals these diagnoses were based on physical examinations of Employee, including consideration of her medical records and her statements regarding her work and her symptoms. While Dr. Cohen acknowledged he did not perform "electrical studies" with respect to Employee's hands, and that such studies may be useful in helping to diagnose carpal tunnel syndrome, there was no testimony or evidence that such studies were necessary to the making of such a diagnosis. Nor was there any testimony or evidence that the problems Employee experiences with her hands were due to anything other than carpal tunnel syndrome. We are not persuaded that any discrepancy between the date Employee believed the symptoms of the syndrome began and the date Employee reported such symptoms or related problems to medical personnel is dispositive of whether or not Employee has the syndrome. Employee's credibility and the weight to be given her testimony were for the Commission to decide, and that decision is not subject to our review.

Furthermore, any such discrepancy does not convince us the weight of the evidence requires a determination that Employee's acquisition of the syndrome was not employment related. Employee described her bus washing work as requiring the use of both hands regularly: to move and use a large, vibrating, wheeled machine that weighed approximately 300 to 350 pounds to clean the outside of the buses; to use vibrating, pneumatic water hose and vacuuming equipment to clean the exterior and interior of the buses; and to wash the windows. Employee testified that in January or February 1999 her hands and arms "started hurting [her] real bad" and, at the time of the hearing, she was "always in pain," did not sleep well, had two numb fingers on her left hand, experienced tingling in her right hand, and had loss of grip in both hands. Notably, nothing in the record indicates Employee did anything repeatedly with her hands and arms other than her work washing the exterior and interior of buses for Employer.

 Moreover, after an examination of Employee, Dr. Cohen testified, to a reasonable degree of medical certainty and without contradiction, that the cause of Employee's carpal tunnel syndrome was "an overuse disorder from her work" for Employer. Employer and AIG contend Dr. Cohen's opinion should not be given weight. The Commission has the discretion to decide how much weight to give expert opinions, and we do not review that discretion. *Conley v. Treasurer of Missouri*, 999 S.W.2d 269, 271 (Mo.App. E.D. 1999); *see also Bock v. Broadway Ford Truck Sales, Inc.*, 55 S.W.3d 427, 438 (Mo. App. E.D.2001). Significantly, nothing of record indicates Dr. Cohen's opinion should be ignored or is invalid because he did not observe Employee working and did not have details about the amount of force required in her job or the amount of time she spent performing the different aspects of her job. Nor are we convinced that, as Employer and AIG urge, a physical examination of Employee's hands resulted in no abnormal findings. Dr. Cohen testified in part that, upon performing a physical examination of Employee in November 1999, there was "markedly positive bilateral Tinel's and Phalen's sign at [Employee's] wrists with reproduction of the numbness and tingling. Also she had a mild bilateral median sensory loss to pain and temperature.... Those were the remarkable findings." Dr. Cohen further testified that, upon performing a neurological examination of Employee in August 2000, he found the same conditions existing with respect to Employee's hands.

Employee presented substantial and competent evidence that she contracted an occupational disease, bilateral carpal tunnel syndrome, through conditions at her work with Employer. The Commission's decision that Employee suffers from bilateral carpal tunnel syndrome medically causally related to her employment with Employer is supported by substantial, competent evidence and is not against the overwhelming weight of the evidence.

Point one is denied.

For their second point, Employer and AIG urge the Commission's decision that Employer and AIG were liable for future medical treatment was against the overwhelming weight of the evidence in that the substantial, competent evidence supported a determination Employee was not entitled to such treatment. To the extent this point is based on Employer's and AIG's contention Employee did not satisfy her burden to establish she suffers from bilateral carpal tunnel syndrome causally related to her employment with Employer, we rejected that contention in the discussion of point one and will not address it again. Employer and AIG also urge the

record is insufficient to support an award of future medical benefits because Dr. Cohen testified he would defer to a hand or plastic surgeon regarding whether Employee needed surgery and Employee did not present such a surgeon's testimony.

In relevant part, Section 287.140.1 RSMo Cum.Supp.1998 provides that: "[i]n addition to all other compensation, the employee shall receive and the employer shall provide such medical, surgical, chiropractic, and hospital treatment ... as may reasonably be required after the injury or disability, to cure and relieve from the effects of the injury." If the employee shows by a reasonable probability that she is in need of additional medical treatment by reason of the work-related accident or disease, then the employee may be awarded future medical benefits. *Landers v. Chrysler Corp.,* 963 S.W.2d 275, 283 (Mo. App. E.D.1997). This showing does not require the employee either to present evidence on the specific future medical treatment that will be necessary or to produce conclusive evidence to support the claim for future medical benefits. *Id.*

Dr. Cohen testified that, after his November 1999 examination of Employee, he thought she "needed to see a hand surgeon for consideration for bilateral carpal tunnel releases" and his recommendation did not change as a result of his August 2000 examination of Employee. No contradictory medical opinions or recommendations were presented at the hearing. As we found earlier, Employee's carpal tunnel syndrome is causally related to her employment with Employer. We find Dr. Cohen's testimony sufficient to establish a need for Employee to consult with a surgeon to consider additional treatment of the carpal tunnel syndrome. The fact a hand surgeon did not testify does not eliminate Employee's apparent medical need for a consultation with, and possible care

by, a surgeon to alleviate her carpal tunnel syndrome symptoms. The Commission's decision to award future medical benefits is supported by substantial, competent evidence, and is not against the weight of the evidence.

Point two is denied.

In their third point, Employer and AIG argue the Commission erred in awarding TTD benefits from September 27, 1999, through the present because the substantial evidence supports a conclusion Employee was unable to work due to medical conditions unrelated to the bilateral carpal tunnel syndrome. To the extent this point is based on Employer's and AIG's contention Employee did not satisfy her burden to establish she suffers from bilateral carpal tunnel syndrome causally related to her employment with Employer, we rejected that contention in the discussion of point one and will not address it again. Employer and AIG also urge the Commission erroneously relied on the opinions of Dr. Williams and Dr. Cohen in deciding to award Employee TTD benefits, because those doctors did not base their disability opinions on Employee's bilateral carpal tunnel syndrome alone. Dr. Cohen's opinion regarding Employee's restrictions is also faulty, Employer and AIG contend, because it was based on Employee's representations regarding what she was and was not able to do, rather than on testing.

A TTD award consists of the employer's payment of compensation for not more than 400 weeks during the course of the disability at a weekly rate in effect at the time of the compensated injury or disease. Section 287.170.1 RSMo Cum. Supp.1998. Temporary disability awards are intended to cover a healing period, and are not "intended to encompass disability after the condition has reached the point where further progress is not expected."

*Williams v. Pillsbury Co.,* 694 S.W.2d 488, 489 (Mo.App. E.D.1985). For "total disability," the employee must be unable to return to any employment, not just "the employment in which the employee was engaged at the time" of the injury or disease. Section 287.020.7. Here, Employer and AIG are not contesting either Employee's inability to return to any employment or the apparent determination that, as of the date of the ALJ's award, the carpal tunnel syndrome had not reached a point where further progress was not expected. Therefore, we will not address these aspects of the Commission's decision, which appear supported by the record.

█ Instead, Employer and AIG urge the overwhelming weight of the evidence demonstrates the Commission erred in deciding that Employee's bilateral carpal tunnel syndrome supports a TTD award due to the alleged insufficiency of the two medical opinions regarding Employee's physical limitations. One of those opinions is a letter report from Dr. Williams characterizing Employee as totally disabled due to "bilateral carpal tunnel syndrome, hypertension, and glaucoma." The other is Dr. Cohen's deposition testimony regarding Employee's physical abilities and limitations, including an opinion Employee is partially permanently disabled due to the carpal tunnel syndrome and that the hands were her "main problem ... from a neurologist's perspective." That deposition testimony reveals cross-examination of Dr. Cohen with respect to the disability opinion of Dr. Williams and the extent to which Dr. Cohen's opinion of Employee's disability may relate to injuries Employee sustained in the March 1999 accident. Because the credibility and weight of medical witness testimony is for the Commission, and the Commission's interpretation of these opinions is reasonable, we may not substitute our interpretation of the opin-

ions for that of the Commission. *See Vinson v. Curators of University of Missouri,* 822 S.W.2d 504, 508 (Mo.App. E.D.1991).

Employer and AIG further argue Dr. Cohen's opinion regarding Employee's restrictions is faulty because it was based on Employee's representations regarding what she was and was not able to do, rather than on testing. Employer and AIG do not urge Employee's representations to Dr. Cohen were inaccurate, misleading, or in any way unbelievable. Employer and AIG also do not suggest, through any expert testimony or otherwise, exactly what type of testing or examination related to ascertaining Employee's disability was absent from the experienced physician's analysis. Additionally, nothing in the record indicates Dr. Cohen's residual functional capacity assessment and other examinations of Employee were improper or insufficient to derive an opinion regarding Employee's disability. While more testing or analysis may have been possible, we are not convinced that what Dr. Cohen did to arrive at his opinion was inadequate.

The Commission's TTD award for Employee's bilateral carpal tunnel syndrome is supported by substantial, competent evidence, and is not against the weight of the evidence.

Point three is denied.

For their fourth point, Employer and AIG contend the Commission's finding AIG was the liable insurer was against the overwhelming weight of the evidence and was contrary to law because the substantial, competent evidence supports a finding that Travelers is the liable insurer. Specifically, they urge that, under Section 287.063.2, the employer last exposing the employee to the occupational disease hazard is liable for compensation pertaining to that disease, unless the ninety-day exception for multiple employers in Section

287.067.7 applies. They argue this statutory exception applies to multiple insurers under Section 287.030.2 RSMo Cum.Supp. 1998, and Employee worked for Employer for less than ninety days during AIG's coverage period, therefore, the prior insurer, Travelers, is liable for any workers' compensation due Employee for her bilateral carpal tunnel syndrome.

Section 287.063.2 [4] provides that the employer who is liable for compensation relating to an occupational disease is the employer last exposing an employee to the occupational disease hazard for which a workers' compensation claim is made, regardless of the length of that exposure. Section 287.067.7 makes an exception, however, for occupational diseases due to repetitive motion, such as carpal tunnel syndrome. Specifically, that statutory provision states:

> With regard to occupational disease due to repetitive motion, if the exposure to the repetitive motion which is found to be the cause of the injury is for a period of less than three months and the evidence demonstrates that the exposure to the repetitive motion with a prior employer was the substantial contributing factor to the injury, the prior employer shall be liable for such occupational disease.

Employer and AIG urge this exception applies to multiple insurers pursuant to the terms of Section 287.030.2 RSMo Cum. Supp.1998 which provides that "[a]ny reference to the employer shall also include his or her insurer or group self-insurer." Employer and AIG rely on *Tunstill v. Eagle Sheet Metal Works*, 870 S.W.2d 264 (Mo.App. S.D.1994), for their position this statutory provision requires application of the three month exception of Section 287.067.7 to multiple insurers as well as to multiple employers.

Notably, that case did not address the application of Section 287.067.7 to a single employer's multiple insurers as that statutory provision was not in effect during the relevant time. *See, e.g., id.* at 270 (noting another 1993 statutory amendment was inapplicable to the claims at issue in the case because the claims "antedated" the 1993 amendment). In *Tunstill*, the Southern District affirmed the Commission's decision that a single employer's second insurer was liable for compensation pertaining to an employee's carpal tunnel syndrome. *Id.* The employee, who suffered symptoms before the date the second insurer's coverage began, did not see a physician until shortly after that coverage began. *Id.* at 266. The court decided that the second insurer was liable under the terms of Section 287.063.2 RSMo 1986 because that statute provided for an employer's liability regardless of the length of exposure and, if the employee had changed employers and was subject to identical working conditions, the second employer and its insurer would have been liable for the compensation. *Id.* at 271–72.

While acknowledging the Southern District did not apply the exception of Section 287.067.7 in *Tunstill*, Employer and AIG contend that the *Tunstill* decision provides "the framework for handling cases involving successive insurers." We disagree and find our decision in *Bollmann v. Certain-Teed Products Corp.*, 651 S.W.2d 613 (Mo. App. E.D.1983), which was discussed in the *Tunstill* decision, more applicable.

In *Bollmann*, we addressed whether a single employer's first insurer or second

---

4. Section 287.063.1 states:

An employee shall be conclusively deemed to have been exposed to the hazards of an occupational disease when for any length of time, however short, he is employed in an occupation or process in which the hazard of the disease exists, subject to the provisions relating to occupational disease due to repetitive motion, as ... set forth in subsection 7 of section 287.067, RSMo.

insurer was liable under a statutory provision, Section 287.063.2 RSMo 1978, that made the only employer liable for asbestosis the last employer exposing the employee to the hazard of asbestosis for at least ninety days. *See id.* The Commission found the employer and its second insurer liable for an employee's asbestosis resulting from an exposure to asbestos dust during approximately thirty-five years of employment with the employer. *Id* at 614. The first insurer provided coverage for the employer for the first thirty-four years or so of employment, whereas the second insurer provided coverage during the last ten weeks of the employment. *Id.* The second insurer appealed urging it was not liable due to the statutory provision stating that "[a]ny reference to the employer shall also include his insurer." *Id.* at 615 ((internal quotation marks omitted) (quoting Section 287.030.2 RSMo 1978)). Noting that the insurer's "ingenious argument" had not been addressed in this jurisdiction, we concluded

> Logic and equity require us to hold that the exception in Section 287.063.2 [RSMo 1978] does not require that the last insurer should be the insurer of the employer for a period of at least ninety days before its coverage is effective with respect to a compensable claim for asbestosis.... Rather, the legislature intended that the insurer providing coverage at the time of the employee's injury should indemnify the employer, regardless of when the carrier assumed the risk.

*Id.* at 616. We noted, in part, the insurance carrier "does not employ and ... does not expose the employee to the hazard giving rise to the claim." *Id.* at 615. Rather, the insurer "contracts with the employer to insure against the risks of the employer for which the employer becomes liable during the term of the contract of insurance." *Id.* Furthermore, we rea-

soned, the purpose of the statute was "to determine who among multiple employers" was liable for the asbestosis, the statute had "no reference to insurance carrier status," and substituting the word insurer for the word employer in the statute showed "the incongruity of such a reading." *Id.* at 616. Finally, we observed, the legislature could not have "intended that an insurer on a risk for less than ninety days should be relieved of liability" for that could lead to a situation where an employer would not have insurance coverage "contrary to the strong intent of the statute that the liability of the employer be covered by insurance. Section 287.280 RSMo Supp. 1982." *Id.*

 We find the reasoning and conclusion of *Bollmann* applicable here. The exception to the last exposure rule set forth in Section 287.067.7 clearly does not apply to an employer's insurer, because the insurer is not the entity exposing the pertinent employee to the repetitive motion resulting in the compensable occupational disease. Furthermore, we discern the purpose of Section 287.067.7 is to determine which of two employers is liable for occupational disease resulting from repetitive motion. *Owens v. Norb Hackmann, Inc.*, 979 S.W.2d 941, 944 (Mo.App. E.D.1998) ("the legislature enacted Section 287.067.7 to avoid the sometimes harsh result of the last exposure rule when that last exposure is short in duration and follows employment that was more substantial in duration, or more significant in the development of the occupational disease, or both"). Importantly, Section 287.067.7 does not expressly refer to insurance carriers, insurers, insurance companies, or any insurance-related entity. We also conclude that substituting the word "insurer" for the word "employer" in Section 287.067.7 renders the statute incongruous because the insurer is not the entity exposing the employee to the repetitive motion. Finally, we are not persuaded the legisla-

ture wanted an employer's insurer to avoid liability based merely on the length of time the insurer provided the employer with coverage. What we stated in *Bollmann*, 651 S.W.2d at 616, applies equally here:

> Logic and equity require us to hold that the exception in Section [287.067.7] does not require that the [liable] insurer should be the insurer of the employer for a period of at least [three months] before its coverage is effective with respect to a compensable claim for [an occupational disease due to repetitive motion].... Rather, the legislature intended that the insurer providing coverage at the time of the employee's injury should indemnify the employer, regardless of when the carrier assumed the risk.

Even if we concluded Section 287.067.7 did apply to a single employer's multiple insurers, we would still uphold the Commission's decision in this case. We have decided that Section 287.067.7, in part, keeps a second employer who has exposed an employee to repetitive motion for less than three months liable, unless there is a showing a prior employer's exposure of the employee to the repetitive motion is "the substantial contributing factor" to the occupational disease. *Arbeiter v. National Super Mkts., Inc.*, 990 S.W.2d 142, 145–46 (Mo.App. E.D.1999). The "substantial contributing factor" language in Section 287.067.7 means "the factor which is the more responsible of the two contributing factors." *Mayfield v. Brown Shoe Co.*, 941 S.W.2d 31, 36 (Mo.App. S.D.1997).

▮ In the instant case, there was no showing that Employee's exposure to the repetitive motion during the period of coverage provided by the prior insurer, Travelers', was "the substantial contributing factor to" Employee's bilateral carpal tunnel syndrome. No expert testimony or other evidence distinguishes the type or duration of bus-washing work Employee performed under Travelers' and under AIG's coverage periods. The length of time of repetitive motion exposure was basically the same under both insurers' coverage periods. Additionally, the record does not disclose that Employee's repetitive motions for bus washing changed to any significant degree during either insurer's coverage period. AIG and Employer point out that Employee engaged in non-bus washing activities for approximately three weeks after the March 1999 accident. This merely makes the approximately eight week length of exposure during AIG's coverage period three weeks or so less than the length of exposure during Travelers' coverage period, assuming Employee began working for Employer at the beginning of November 1998. In and of itself, the three week difference is not enough to establish that exposure during the first insurer's coverage period was "the substantial contributing factor" in Employee's bilateral carpal tunnel syndrome. Under these circumstances, there is no basis for shifting liability to the prior insurer under Section 287.067.7, even assuming arguendo that this statutory provision encompasses multiple insurers for one employer as well as multiple employers.

The Commission did not err in imposing liability on AIG. That decision is supported by substantial, competent evidence, is not against the weight of the evidence, and is not contrary to law.

Point four is denied.

The Commission's award is affirmed with respect to the issues raised in this appeal.

MARY R. RUSSELL, P.J. and
CHARLES B. BLACKMAR, S.J., concur.