Gilberto GARIBAY, Employee,

v.

TREASURER OF MISSOURI as Custodian of Second Injury Fund, Employer.

No. 69606.

Missouri Court of Appeals,
Eastern District,
Division Four.

Aug. 13, 1996.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 1, 1996.

**58**

Mogab & Hughes Attorneys, P.C., Charles A. Mogab, Nancy R. Mogab, St. Louis, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jefferson City, Vicky L. Anthony, Assistant Attorney General, St. Louis, for Respondent.

PUDLOWSKI, Presiding Judge.

Gilberto Garibay (Garibay) appeals the decision of the Labor and Industrial Relations Commission (Commission) denying him Second Injury Fund compensation. Garibay settled this claim with his employer and the sole issue was liability of the Second Injury Fund. Garibay's claim was originally brought before an Administrative Law Judge (ALJ) who determined him to be permanently and totally disabled. The appeal by the Second Injury Fund to the Commission reversed the ALJ's award and found that none of Garibay's preexisting injuries were "industrially disabling." This court then remanded the case back to the Commission to evaluate in accordance with the standard set forth in § 287.220.1 RSMo (1994) due to a legislative amendment in 1993. The Commission again reversed the findings of the ALJ. We reverse and remand.

Garibay worked for Marcraft, Inc. (employer), for about eight months for forty hours per week, assembling air conditioning units. On January 16, 1989, he was assisting several co-workers in lifting a piece of steel weighing several hundred pounds when he injured his left shoulder. His shoulder was treated and he was paid 162 and 5/7 weeks of temporary total disability due to his inability to work and later settled with his employer

for a 35.5% permanent shoulder disability. Garibay was subsequently laid off.

Following his employment at Marcraft, Inc., Garibay was hired by General Motors as part of a welding team on the assembly line. He was unable to consistently perform the duties assigned to him and was subsequently transferred to another position which required him to stand. However, he was unable to fulfill his duties in this position as well. General Motors transferred him to several other jobs in an attempt to find one which he could perform; but they were unsuccessful in finding him a position. He was dismissed.

Prior to Garibay's primary injury in January 1989, he suffered from numerous disabilities which included: morbid obesity, sleep apnea, a broken left wrist in 1978, numbing pain in the right arm since 1982 due to the removal of a tumor, two injuries to the left ankle in 1987 and arthroscopic surgery on the left knee in 1988. Garibay has unsuccessfully attempted to surgically correct his sleep apnea and to restrict his diet.

The ALJ determined Garibay suffered from prior permanent and industrially disabling conditions. Combined with his primary injury sustained at Marcraft, Inc., the ALJ determined that the total disability was greater than the additive sums of the injuries which resulted in Garibay's permanent and total disability. Garibay was awarded Second Injury Fund compensation. On appeal to the Commission, Garibay's award was reversed. After reviewing the evidence and considering the whole record, the first Commission accepted Garibay's testimony as true but found that none of his injuries were industrially disabling because he was able to continue working without restrictions following each of the injuries. Garibay then appealed to this court which reversed and remanded the cause back to the Commission for reconsideration in accordance with the standards set forth in § 287.220.1 RSMo (1994). Upon remand, the Commission [1] again reversed the ALJ stating that none of Garibay's numerous preexisting injuries constituted an obstacle or hindrance to his employment due to his ability to continue his employment following the primary injury.

This court's review of the Commission is limited. Appellate review is governed by § 287.495 RSMo (1994). This court may only set aside the Commission's decision if there is no substantial and competent evidence to support it or if its determination is clearly contrary to the weight of the evidence. *Blackwell v. Puritan–Bennett Corporation,* 901 S.W.2d 81, 83 (Mo.App. E.D. 1995). The Commission is the sole judge of the credibility of the witnesses [2], and this court will not substitute its interpretation of factual issues for that of the Commission even if it would have made a different determination. *Faulkner v. St. Luke's Hospital,* 903 S.W.2d 588, 591–592 (Mo.App. W.D. 1995). In this appeal we review questions of law independently. § 287.495 RSMo (1994).

This case was remanded to the Commission in order to evaluate it based on the amendment of § 287.220.1 RSMo (1994). *Garibay v. Marcraft, Inc.,* 899 S.W.2d 553, 555 (Mo.App. E.D.1995). Prior to this amendment, preexisting injuries with regard to Second Injury Fund liability were evaluated by the judicially imposed "industrially disabling" standard. This judicial standard was created to limit Second Injury Fund liability to those individuals who suffered a work-related injury and a preexisting disability. To determine if a preexisting injury was industrially disabling, the Commission would look to past circumstances as indicia of the injury's seriousness. This inquiry was based on the effect of the injury on the employee's ability to perform work-related duties before the employee sustained the primary injury. *Faulkner v. St. Luke's Hospital,* 903 S.W.2d 588, 592 (Mo.App. W.D.1995). This standard did not, however, require the employee to totally stop working. The court recognized that some injured persons may still have to work while in pain and determined that this is not conclusive proof that the preexisting injury is not industrially disabling. *Searcy v.*

---

1. The Commission personas upon remand were different from the original Commission.

2. We note that the Commission in its first decision acknowledges that it "accepts as true the testimony of the claimant."

*McDonnell Douglas* 894 S.W.2d 173, 177 (Mo.App. E.D.1995).

■ The legislature is presumed to know the law and, therefore, enacted the amendment to § 287.220.1 in order to have some effect on the statute's application. *Wollard v. City of Kansas City,* 831 S.W.2d 200, 203 (Mo. banc 1992). In construing this statute, the words used are to be considered in their plain and ordinary meaning to ascertain the intent of the legislature. *Id.* The provisions of the legislative act must be construed and considered together. *Id.*

The 1993 amendment to § 287.220.1 RSMo (1994) superseded the former judicially created standard of "industrially disabled." The new standard was meant to clarify which preexisting conditions would be serious enough to trigger the statute. *Leutzinger v. Treasurer,* 895 S.W.2d 591, 593 (Mo.App. E.D.1995). Following the legislature's amendment, the preexisting injury need only be "of such seriousness as to constitute a hindrance or obstacle to employment or to obtaining reemployment if the employee becomes unemployed" in order to trigger § 287.220 RSMo (1994). If there are preexisting injuries which result in permanent partial disabilities, it is also requisite to meet the minimum requirements of fifty weeks for injuries to the body as a whole or fifteen percent for major extremities. There are no requirements when the preexisting permanent partial disability and the primary injury combine to cause permanent total disability to the employee. *Culp v. Lohr Distributing Co.,* 898 S.W.2d 613, 614 (Mo.App. E.D.1995).

Upon remand, this Commission failed to apply the statutory standard in evaluating Garibay's preexisting disabilities. In its denial of compensation, the Commission indicated that Garibay's preexisting injuries did not meet the "hindrance or obstacle" standard due to Garibay's ability to work without restrictions prior to his primary injury. Without exception, every factor this Commission enumerated for denying Garibay compensation under the "hindrance or obstacle" standard was set forth by the prior Commission in its "industrially disabling" evaluation.

Due to the presumption that the legislature does not enact meaningless provisions, there must be some change intended by its amendment. By disregarding this amendment, the Commission is nullifying the legislature's attempt to change the application of the law. To implement the changes the legislature made in the statute, the Commission is required to use different criteria to determine if a preexisting disability rises to the level of "a hindrance or obstacle to employment or to reemployment if the employee becomes unemployed."

■ In order to maintain the purpose of the Second Injury Fund and initiate the changes as directed by the legislature, the Commission's inquiry into prior injuries should focus on the *potential* that the preexisting injury may combine with a future work related injury to result in a greater degree of disability than would have resulted if there were no such prior condition. *Wuebbeling v. West County Drywall,* 898 S.W.2d 615, 620 (Mo.App. E.D.1995). If a cautious employer could reasonably foresee that there is the potential for the preexisting injuries to combine with a work related injury and that combination would have a greater degree of disability than without the prior condition, then the preexisting injury would constitute "a hindrance or obstacle to employment or reemployment if the employee became unemployed." *Id.* We "expect that any preexisting injury which could be considered a hindrance to an employee's competing for employment in the open labor market should trigger second injury fund liability." *Leutzinger,* 895 S.W.2d at 593.

■ Upon reconsideration of Garibay's preexisting disabilities in conjunction with the 1993 amendment, the Commission should be aware that not all portions of § 287.220.1 RSMo (1994) as amended are to be applied retroactively. This amendment has characteristics of both substantive and remedial language. *Faulkner v. St. Luke's Hospital,* 903 S.W.2d 588, 592 (Mo.App. W.D.1995). Each of Missouri's districts have held [3] that the portion of the amendment which creates

**3.** *Smart v. Missouri State Treasurer,* 916 S.W.2d 367 (Mo.App. S.D.1996), *Fletcher v. Second Injury Fund,* 922 S.W.2d 402 (Mo.App. W.D.1996),

a new standard for a preexisting injury is to be applied retrospectively as it is a procedural amendment which is not in conflict with an individual's substantive rights. In contrast, the portion of the amendment that sets limits on the degree of disability that must be found in order for Second Injury Fund liability to attach does affect a substantive right and, thereby, must not be applied retrospectively.

■ This creates a new dynamic for the Commission upon remand. When evaluating Garibay's preexisting injuries, the Commission should use the "hindrance or obstacle" standard from the 1993 amendment to determine if the injuries rise to the level of preexisting disabilities. Second Injury Fund liability will be imposed under the pre–1993 amendment when the injury occurred prior to the amendment if either: (1) the combination of the preexisting disabilities with the primary injury results in a greater disability than the sum of the injuries independently, or (2) the primary injury is a partial permanent disability that combines with the preexisting disability and results in total permanent disability. *Anderson v. Emerson Electric Company,* 698 S.W.2d 574, 576 (Mo.App. E.D.1985). Since Garibay's primary injury occurred prior to the legislative amendment, the Commission needs to determine: (1) his preexisting disabilities under the modified statute, and (2) apply the minimum standards for Second Injury Fund's liability under the statute as it existed at the time of the primary injury.

■ Upon further review of the entire record, we are not convinced of the Commission's denial of benefits to Garibay. We are unable to understand the Commission's rationalization of its rejection of the credibility of all the medical experts. We observe that all of the doctors who testified regarding Garibay's injuries had access to his medical records. It seems that their examinations and conclusions would be evidence to support Garibay's subjective complaints of his preexisting disabilities. Each of the experts testifying about Garibay's preexisting disabilities concluded that given the presence of his sleep apnea, his employment in the open labor market would be severely or totally limited. We recognize that the Commission need not accept the conclusions of the experts that testified, yet we think it is unusual that the conclusions of all of the experts in this case were virtually ignored.

■ The Commission seemed to discount the presence of Garibay's sleep apnea as a preexisting condition for the sole reason that it was not diagnosed until after the primary injury. While we recognize that the Commission does not have "to accept competent substantial evidence as true, the Commission cannot, nevertheless, arbitrarily cast aside competent, substantial, and undisputed testimony of witnesses who are not shown by the record to have been impeached." *Pippin v. St. Joe Minerals Corporation,* 799 S.W.2d 898, 909 concurrence (Mo.App. S.D.1990). If there is undisputed evidence that it takes years for sleep apnea to develop and it was diagnosed in the year of the primary injury, then it must have been a preexisting condition to the primary injury and be considered in Garibay's evaluation. Yet, if there is evidence that the sleep apnea could have developed after the primary injury, it should be discounted. However, we found no evidence to support this theory.

We also note that following Garibay's release from Marcraft, Inc. and his hiring at General Motors, he was unable to keep his position due to factors other than his primary injury. While his primary injury did play some role in this, it seems not to be the exclusive reason for his dismissal from the plant. When General Motors attempted to find him a job off of the assembly line, Garibay was unable to complete these varied tasks due to his inability to stand for periods of time. In review of the record, the Commission's reasoning in reaching its findings is not clearly set forth.

The decision is reversed and remanded to the Commission for further proceedings consistent with this opinion.

SIMON and HOFF, JJ., concur.

*Faulkner v. Chrysler Corporation,* 924 S.W.2d 866      (Mo.App. E.D.1996).