**Sherry L. (Ellis) JONES, Respondent,**

v.

**DAN D. SERVICES, L.L.C., and Casualty Reciprocal Exchange, Appellants.**

**No. WD 61233.**

Missouri Court of Appeals, Western District.

Dec. 17, 2002.

Victor B. Finkelstein, Kansas City, MO, for Appellant.

Robert E. Douglass, St. Joseph, MO, for Respondent.

Before EDWIN H. SMITH, P.J., JAMES M. SMART, JR., and LISA WHITE HARDWICK, JJ.

JAMES M. SMART, JR., Judge.

This is an appeal from the Labor and Industrial Relations Commission. Dan–D Services, L.L.C., appeals the Commission's decision, dated March 1, 2002, affirming an award for permanent partial disability and reimbursement of medical expenses in favor of Dan–D's employee Sherry L. (Ellis) Jones.

## Factual Background

On the date of her injury, October 29, 1998, Sherry (Ellis) Jones ("Jones") was employed by Dan–D–Services, L.L.C. ("Dan–D") and assigned to Bev–Lin Enterprises as a laborer. Dan–D is a temporary employment agency. Ms. Jones was first assigned to work at Bev–Lin on October 19, 1998.

Ms. Jones' job at Bev–Lin required her to cut plastic covers off boxes containing twenty-four cans of cat food. She would then lift three boxes of the cat food at a time from a pallet and place these three high on a conveyor belt, which was approximately at her chest level. Ms. Jones testified that she lifted three boxes every twenty seconds for six hours out of an eight hour day.

Within a week and a half, Ms. Jones began experiencing a burning sensation in her left shoulder. On October 29, 1998, she reported this to her supervisor at Bev–Lin. The supervisor advised her to take some over-the-counter pain relievers and advised her to try to continue working. On November 3, 1998, she was sent to Occupational Health by her employer where she was examined by Dr. Gregory Henry, D.O. After examining her, Dr. Henry placed her on light duty with restrictions.

On November 9th, Dr. Henry restricted her to lifting ten to fifteen pounds and advised that she should not perform any work that required lifting her arms above her shoulders. Dr. Henry raised the lifting restriction to twenty pounds on November 16th, and on November 23rd, he qualified Ms. Jones for full duty. On November 30th, Dr. Henry ordered two weeks of physical therapy three times a week for Ms. Jones, but continued her on full duty. Ms. Jones returned to her job at Bev–Lin on November 30th, but she was allowed to work only an hour. Shortly after telling her supervisor about the physical therapy requirement, she was told that her job was completed.

Following two weeks of physical therapy, Ms. Jones returned to Dr. Henry and was released from his care on December 14, 1998. Dan–D Services informed Ms. Jones that it had no work available for her at that time. On December 16, 1998, just two days after being released by the doctor, Ms. Jones lifted a 15 to 20 pound laundry bag while at home. This caused the same pain she had previously suffered. Ms. Jones asked Dan–D to return her to Occupational Health, but was told that Dan–D considered this a new injury and that she would have to provide her own medical treatment. Ms. Jones saw Dr. David Cathcart, D.O., her own personal physician, on two occasions. The first visit was on December 17, 1998. At her second visit, on January 11, 1999, the doctor noted that she said she was "doing a whole lot better," but he also mentioned that there still was mild palpating tenderness in the rhomboid area on her left side.

On May 10, 1999, Ms. Jones was examined by Dr. David Tillema, M.D., at Dan–D's request. Dr. Tillema diagnosed myofascial pain, stating in his report: "There is a question of causation. It appears that she had the onset of myofascial pain while she was doing repetitive lifting, therefore, it does seem that there is some causal relationship between her work and the onset of her pain." Dr. Tillema recommended physical therapy and anti-inflammatory medication and stated that Ms. Jones should not do any overhead work.

Dan–D also requested that Ms. Jones be examined by Dr. Michael J. Poppa, D.O. Ms. Jones was examined by Dr. Poppa, first, on December 16, 1999, and a second time on May 4, 2001. Dr. Poppa found that Ms. Jones had sustained some type of

injury between those exam dates because of an increase of symptoms on the latter date. Dr. Poppa explained that the December 16, 1999, examination indicated only a left shoulder strain and that on May 4, 2001, he diagnosed chronic myofascial syndrome. Dr. Poppa rated Ms. Jones' disability at five percent of the body, but indicated that he believed the disability was the result of the injury sustained when Ms. Jones lifted the bag of laundry at home and was not related to the injury suffered while employed with Dan–D Services. Dr. Poppa concluded that the original injury had been resolved when Ms. Jones was released from Dr. Henry's care on December 14, 1998.

Ms. Jones also was examined by Dr. P. Brent Koprivica, M.D., on December 28, 2000. Dr. Koprivica's report was admitted into evidence at the hearing. Dr. Koprivica found Ms. Jones had developed a regional myofascial pain syndrome in the left scapula area. Dr. Koprivica found that the October 29, 1998, injury at Bev–Lin was the medical cause of her injury. He rated her disability at fifteen percent of the body as a whole.

In January of 1999, Ms. Jones began working for a cleaning service, cleaning bathrooms at a business office. Then, in April of 1999, Ms. Jones started her own residential cleaning service, which she continued until August of 1999, when she had to stop working due to an unrelated medical problem. In October of 2000, Ms. Jones began working as a cashier at a grocery store and was employed in that capacity at the time of the hearing, June 14, 2001. Ms. Jones acknowledged on cross-examination that the work she did on these three jobs aggravated her left shoulder, upper back, and neck muscles.

Following the hearing, the Administrative Law Judge ("ALJ") granted an award in favor of Ms. Jones and against Dan–D.

The ALJ specifically found that as a result of the October 29, 1998, accident, Ms. Jones sustained a permanent partial disability of ten percent of the body as a whole, and ordered Dan–D to pay to the employee the sum of $137.34 per week for forty weeks for a total of $5,493.60. The ALJ also awarded unpaid medical expenses of $1,751.53.

Dan–D appealed to the Labor and Industrial Relations Commission. The Commission affirmed the judgment of the ALJ, and the employer now appeals the Commission's affirmance to this court.

### Points I and II:

Dan–D's first and second points are based on the argument that there was insufficient evidence to warrant the making of the award in that, according to Dan–D, the evidence fails to show that Ms. Jones' partial permanent disability was the result of the October 29, 1998, injury at Bev–Lin Enterprises, but was the result of her subsequent activities and employment. Dan–D's first point is that there was not sufficient competent evidence to support the making of the award in that Claimant's expert, Dr. Koprivica, failed to apportion the disability between the work injury and the subsequent employment. Dan–D argues that Dr. Koprivica's testimony was, therefore, not credible, and cannot be the basis of an award because there was no proof of the percentage of disability. In their second point, the appellants contest the award of the unpaid medical expenses, again arguing that the treatment was necessitated not by the original injury but by the employee's subsequent employment.

### Standard of Review

This court's review of the Commission's judgment is limited to the grounds enumerated in § 287.495.1 RSMo. *Garibay v. Treasurer of Missouri*, 930 S.W.2d 57, 59

(Mo.App.1996). Section 287.495.1 provides in relevant part:

The court, on appeal, shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other:

(1) That the commission acted without or in excess of its powers;

(2) That the award was procured by fraud;

(3) That the facts found by the commission do not support the award;

(4) That there was not sufficient competent evidence in the record to warrant the making of the award. . . . .

■ In interpreting this statute, the courts have applied a two-step review process to determine whether the Commission could have reasonably made its findings and award based upon all the evidence before it. *Davis v. Research Medical Center*, 903 S.W.2d 557, 565 (Mo.App.1995). The *Davis* two-step process can be summarized as follows: The reviewing court first examines the whole record, viewing the evidence and all reasonable inferences therefrom in the light most favorable to the award, in order to determine if the record contains sufficient competent and substantial evidence to support the award. *Id.* at 571. If the court finds sufficient competent and substantial evidence to support the award, it then determines whether or not the award is against the overwhelming weight of the evidence. *Id.* In making this determination, the reviewing court views the evidence in the light most favorable to the award, but must consider all evidence in the record, including that which opposes or is unfavorable to the award. *Anderson v. Noel T. Adams Ambulance Dist.*, 931 S.W.2d 850, 852–53 (Mo. App.1996) (citing *Davis*, 903 S.W.2d at 571). Under both steps, the reviewing

court defers to the Commission on issues of witness credibility and weight given to the testimony. *Lorentz v. Missouri State Treasurer*, 72 S.W.3d 315, 318 (Mo.App. 2002).

### Step 1: Substantial Evidence to Support the Award

■ Dan–D's first point is addressed to the sufficiency of the evidence in view of Dr. Koprivica's failure to apportion the disability.

Dan–D fails to acknowledge that, in addition to evidence from doctors, there was also testimony by the claimant. The Commission made a credibility judgment based upon the testimony of Ms. Jones.

The ALJ, in his findings of fact, specifically stated: "The claimant testified in person. I found her to be a believable witness." The ALJ also noted:

The employer argues that her condition was caused not at its employment where her symptoms started, but from her lifting a laundry bag and her subsequent employment.

I believe that while her pain was greatly reduced before she picked up the laundry bag, she had injured herself from the lifting of the cases of cat food. When she didn't work for a few days her swelling and pain were lower until she would use her left shoulder and then it would become inflamed. I believe the lifting of the cases of cat food was a substantial factor in the October 29, 1998, injury to her left shoulder and body as a whole.

The ALJ concluded that as a result of the October 29, 1998, injury, the employee sustained a permanent partial disability of ten percent of the body as a whole. The Commission affirmed the award and decision of the ALJ and incorporated it by reference into its Final Award.

■ "This court defers to the commission on issues involving credibility of witnesses and the weight given to their testimony." *Decker v. National Accounts Payable Auditors,* 993 S.W.2d 518, 523 (Mo.App.1999) (citing *Alexander v. D.L. Sitton Motor Lines,* 851 S.W.2d 525, 527 (Mo. banc 1993)). On such questions, the reviewing court may not substitute its judgment on the evidence for that of the Commission. *Davis,* 903 S.W.2d at 571. Thus "[i]nquiry on questions of fact is limited to a determination of whether the commission could have reasonably reached the result it did." *Decker,* 993 S.W.2d at 523.

The Commission considered the testimony of Ms. Jones, along with Dr. Koprivica's report and Dr. Tillema's statement that "she had the onset of myofascial pain while she was doing repetitive lifting, therefore, it does seem that there is some causal relationship between her work and the onset of her pain[,]" constitute sufficient competent and substantial evidence to support the award. As Dan–D conceded in argument before this court, the first prong of the two-step review process was satisfied. The fact that Dr. Koprivica did not apportion the disability is not a basis to attack the ruling, where the Commission could have believed that the employment was a substantial factor in causing the injury, and any later difficulties were nothing more than aggravations of the work-related injury.

### Step 2: Weight of the Evidence

■ Having determined that the first prong of the *Davis* process has been satisfied, we move on to the second step. At this point, the court must determine whether the award is against the overwhelming weight of the evidence after considering all evidence in the record, including that which opposes or is unfavorable to the award. *Davis,* 903 S.W.2d at 571. In making this determination, we again view the evidence in the light most favorable to the award. *Id.*

Dan D claims that Ms. Jones' condition improved after she stopped working for Bev–Lin and that she was well until she (1) lifted a laundry bag at home (just two days after her medical release on the previous work-related injury); (2) started working for a cleaning service; (3) worked for herself in a cleaning service; and (4) started working as a grocery store cashier.

Ms. Jones acknowledged on cross-examination that the work she did for the residential and commercial cleaning services and as a grocery store cashier aggravated her left shoulder, upper back, and neck muscles.

Also at the hearing, Deborah Malone testified for Dan–D that each case of cat food lifted by Ms. Jones weighed nine and a half pounds (and not fifteen as stated by Ms. Jones). She also testified that the claimant was not *required* to lift three cases at a time, but that three was the maximum employees are allowed to lift. The ALJ stated that he believed Ms. Malone's testimony with regard to this information, but that the fact still remained that "the claimant was required to perform heavy labor."

Dr. Poppa testified via deposition that, based upon what he believed to be a change in Ms. Jones' condition between December 16, 1999 and May 4, 2001, it was his opinion that Ms. Jones had sustained additional injury to her shoulder and cervical and thoracic paraspinous muscles, between those dates. Dr. Poppa explained that the December 16, 1999, examination indicated only a left shoulder strain and that it was not until May 4, 2001, he diagnosed her with chronic myofascial syndrome. Dr. Poppa's opinion, however, was not consistent with other evidence relied

upon by the Commission. The ALJ points out in his findings of fact that Dr. Tillema diagnosed myofascial pain when he examined Ms. Jones on May 10, 1999 and Dr. Henry and Dr. Cathcart diagnosed her with myofascial pain shortly after the October 29, 1998 injury, and prior to Dr. Poppa's December 16, 1999, examination.[1]

Dr. Poppa rated Ms. Jones' disability at five percent of the body. He indicated that he believed the disability was the result of the injury sustained when she lifted the bag of laundry at home and was not related to the injury suffered while lifting three flats of canned cat foot every twenty seconds for six hours a day to chest level while employed with Dan–D Services. Dr. Poppa noted that Ms. Ellis Jones was fully released from Dr. Henry's care on December 14, 1998, for the October 29, 1998, work-related injury, and concluded that the original injury had been resolved when she was released from Dr. Henry's care.

The appellants contend that because Dr. Koprivica failed to apportion the disability between Ms. Jones' subsequent employment and the work-injury at Bev–Lin, his opinion is not credible. The appellants assert that the Commission, instead, should have relied upon Dr. Poppa's "more significant evidence" that subsequent employment caused a change in Ms. Jones' physical condition between Dr. Poppa's first examination on December 16, 1999 and the second and final one in May of 2001.

While the Commission cannot cast aside "competent, substantial, and undisputed testimony," the Commission is not required to accept disputed evidence. The Commission is the sole judge of the credibility of the witnesses. *Bloss*, 32

S.W.3d at 671 (quoting *Garibay*, 930 S.W.2d at 61). "Determinations with regard to causation and work-relatedness are questions of fact to be ruled upon by the Commission, [] and the reviewing court may not substitute its judgment on the weight of the evidence or on the credibility of witnesses for that of the Commission." *Bloss*, 32 S.W.3d at 671. Dan–D forgets that Dr. Poppa's opinion conflicted with other evidence in the case, specifically, the claimant's testimony, Dr. Koprivica's opinion, and Dr. Tillema's observation. Dan–D fails to show that Dr. Koprivica, having formed the opinion that the original injury was work-related, and that subsequent difficulties were aggravations of that injury, was required to apportion the disability between Dan–D and subsequent employers. Nor do we agree that we can say that Dr. Koprivica's opinion was not credible, especially in light of the claimant's testimony.

### Medical Payments

With regard to the award of medical payments, "[t]he right to medical aid is a component of the compensation due an injured worker under § 287.140.1." *Sullivan v. Masters Jackson Paving Co.*, 35 S.W.3d 879, 888 (Mo.App.2001). That statute provides, in relevant part: "In addition to all other compensation, the employee shall receive and the employer shall provide such medical, surgical, chiropractic, and hospital treatment ... as may reasonably be required after the injury or disability, to cure and relieve from the effects of the injury." *Smith v. Tiger Coaches, Inc.*, 73 S.W.3d 756, 764 (Mo.App. 2002) (quoting § 287.140.1). "If an employer has notice that the employee needs

1. Dr. Henry's "OHS–COMPCARE—Return to Work Status" examination sheet, dated November 23, 1998, shows a diagnosis of "Myofascial strain Cervio Dorsal strain." Dr. Cathcart's report dated December 17, 1998, indicates that she was suffering with "myofascial pain and cervical/thoracic/dorsal strain."

medical treatment and fails to provide it as required by the statute, the employee can pick his own medical provider and the employer will be liable for those costs." *Feltrop v. Eskens Drywall and Insulation,* 957 S.W.2d 408, 415 (Mo.App.1997). Here, the Commission correctly found that the employer withheld medical care from the claimant while she was still in need of treatment.

Points I and II are denied. We affirm the award.

### Point III:

In Point III, Dan–D contends the Commission erred in ordering reimbursement of a lien from the Missouri Department of Social Services. The ALJ "order[ed] the employer and insurer to satisfy the medical lien and to pay to the Missouri Department of Social Services, Division of Medical Services the sum of $1,751.53, and to pay to the claimant an additional $615.00 for past medical treatment."

Dan–D contends that this portion of the award must be reversed, because (1) the Medicaid lien was not introduced into evidence nor made a part of the record; (2) Ms. Jones failed to prove that all the charges in the lien were for medical expenses related to this injury; and (3) there is a discrepancy between the amount awarded and the amount of the lien, and the judge gave no explanation for that discrepancy. Ms. Jones concedes, in her response, that the Commission may have erred in ordering the reimbursement of the Medicaid lien and suggests that this court should modify the award by reversing that part of the award. She does not make clear exactly how or why that award should be modified, however.

Because there does appear to be a discrepancy between the amount of the Medicaid lien and the amount that was awarded to satisfy that lien, and because both

parties believe this part of the award was in error, we remand the matter to the Commission for further disposition on the matter of lien reimbursement.

### Conclusion

The award is affirmed, except for that portion of the award intended to satisfy the Medicaid lien. The case is remanded to the Commission to resolve the issues related to the lien.

SMITH and HARDWICK, JJ., concur.