Mark **TOMBAUGH,** Appellant,

v.

**TREASURER OF THE STATE of Missouri as Custodian of the Second Injury Fund,** Respondent.

**No. WD 73171.**

Missouri Court of Appeals, Western District.

Aug. 30, 2011.

David A. Slocum, Lenexa, KS, for Appellant.

Chris Koster, Attorney General, Jefferson City, MO, Laura Van Fleet, Assistant Attorney General, Kansas City, MO, for Respondent.

Before Division One: VICTOR C. HOWARD, Presiding Judge, and ALOK AHUJA and KAREN KING MITCHELL, Judges.

KAREN KING MITCHELL, Judge.

This is a Second Injury Fund case. The issue is whether the Labor and Industrial Relations Commission ("Commission") erred in relying on medical reports and on medical expert testimony to determine the degree of the claimant's disability when the medical expert later testified to a different, though not necessarily contradictory, conclusion. We find that the record is insufficiently clear to determine whether the Commission rejected the expert's modified testimony as not credible or whether it simply overlooked the testimony. Further, the record is unclear as to whether the Commission, in denying the claimant total, permanent disability, relied on any non-medical considerations. Accordingly, we reverse and remand for proceedings consistent with this opinion.

**Facts and Procedural Background[1]**

Appellant Mark Tombaugh worked at a company called Chux Trux, where he in-stalled after-market automobile accessories. In two separate incidents, Tombaugh sustained a neck injury while on the job. When he received treatment for his neck injury, Tombaugh learned that he had a heart condition. The heart condition had not been diagnosed previously, but it existed prior to Tombaugh's work injury. As a result of his heart condition, Tombaugh had to undergo triple-bypass surgery.

Tombaugh also had other preexisting injuries: "disabling orthopedic conditions" to the right hand, left elbow, right shoulder, left shoulder, low back, and right knee.

Tombaugh filed a workers' compensation claim and a Second Injury Fund ("Fund") claim. He alleged that his preexisting disabilities combined with his work-related accidents to render him permanently and totally disabled. Tombaugh settled his workers' compensation claim with his employer and voluntarily dismissed his claim against it. Thus, the portion of Tombaugh's disability that is attributable to his work-related accidents is not at issue here. The Fund contested Tombaugh's claim against it.

On September 25, 2007, Dr. Koprivica, Tombaugh's medical expert, submitted a report detailing Tombaugh's conditions. He concluded that, due to the work injury, Tombaugh had a 35% permanent partial disability to the body as a whole. Koprivica also concluded that Tombaugh had localized and partial disabilities due to the conditions in his right hand (30%, 175 week level), left elbow (30%, 210 week level), right shoulder (10%, 232 week level), left shoulder (10%, 232 week level), and right knee (15%, 160 week level). He concluded further that Tombaugh had 10% permanent partial disability to the body as

---

1. On appeal from an award made by the Commission, we review the facts in a neutral fashion. *Hampton v. Big Boy Steel Erection,* 121 S.W.3d 220, 223 (Mo. banc 2003).

a whole due to the condition in his back. Finally, Koprivica concluded that Tombaugh had a 25% permanent partial disability to the body as a whole due to Tombaugh's preexisting heart condition. That conclusion excluded the deterioration of Tombaugh's heart condition from the time of the work-related accidents going forward. Among Tombaugh's preexisting conditions, the condition to his heart was of "the greatest significance," according to Koprivica.

After reviewing Koprivica's report and interviewing Tombaugh, Mary Titterington, a vocational expert, testified that, given the restrictions that Koprivica recommended in his report, Tombaugh was unemployable. Titterington also noted that Koprivica had not tied any of his recommended restrictions specifically to the heart condition.

On May 29, 2009, Koprivica submitted a second report, which confirmed his previous conclusions, with the exception that he found Tombaugh's back condition to amount to a 20% (as opposed to his previous finding of 10%) permanent partial disability to the body as a whole.

On May 27, 2010, Koprivica testified via deposition. When asked if Tombaugh had a condition that would impact his daily activities, Koprivica replied, "Yes.... I felt he had a significant cardiac impairment." Koprivica testified that, when Tombaugh's preexisting conditions, including his heart condition, were combined with effects of Tombaugh's work-related accidents, the result was that Tombaugh was "permanently totally disabled." Koprivica testified that Tombaugh's permanent, total disability "was attributable to all the conditions that I had identified." However, at the end of his deposition, Koprivica testified that Tombaugh is "totally disabled" even taking the heart condition out of the equation.

The Division of Workers' Compensation ("Division") noted that there was no dispute that Tombaugh is now permanently and totally disabled. It phrased the disputed issue as follows: "whether Tombaugh's cardiac condition, which was not medically treated or diagnosed prior to [Tombaugh's work-related injuries] can combine with his other pre-existing disabilities and the primary claim to trigger Fund liability and render Tombaugh permanently and totally disabled." Thus, there is no dispute that, at present, Tombaugh is totally and permanently disabled: the issue is whether he became totally and permanently disabled in a manner that triggered the Fund's liability for that degree of disability.

The Division found that "Koprivica's assessment of Tombaugh's permanent total disability includes the cardiac condition." However, the Division found that Tombaugh's heart condition did not trigger the liability of the Fund because it was not a measurable, preexisting disability of such seriousness as to constitute a hindrance or obstacle to his employment prior to the work-related accidents. Accordingly, the Division found that the Fund had no liability with respect to the heart condition.

The Division did find the Fund liable for Tombaugh's permanent, partial disability based on the preexisting orthopedic conditions to his right hand, left elbow, right shoulder, left shoulder, low back, and right knee, and it awarded Tombaugh benefits with respect to those conditions. In reaching that conclusion, the Division did not address Koprivica's final conclusion that Tombaugh's preexisting conditions, in combination with the work-related injuries, rendered him totally and permanently disabled even when the heart condition is excluded from the equation. Since the Division was operating under the premise that "Koprivica's assessment of Tom-

baugh's permanent total disability *includes* the cardiac condition," and because it had found that the cardiac condition was not a hindrance or obstacle to employment prior to the work-related injuries, the Division concluded that "there is insufficient evidence to support Tombaugh's claim for permanent total disability benefits." (Emphasis added.)

Tombaugh appealed to the Commission, arguing that the Division had erred in concluding that "Koprivica's assessment of Tombaugh's total disability includes the cardiac condition." The Commission affirmed the Division's decision and incorporated it by reference. Tombaugh appeals.

### Standard of Review

Our review of this matter must include a determination of whether the Commission's award was (1) authorized by law; and (2) supported by competent and substantial evidence on the whole record. Mo. Const. art. V, § 18. When reviewing the evidence on the record, we do not view the facts in the light most favorable to the award, nor do we make all reasonable inferences in favor of the award. *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 223 (Mo. banc 2003). Rather, we view the facts neutrally. *Id.* We will affirm the Commission's award unless (1) it acted outside the scope of its powers; (2) the award was procured by fraud; (3) the facts found by the commission do not support the award; or (4) the record lacks sufficient, competent evidence to support the award. § 287.495.1.[2]

When, as here, the issue on appeal is one of fact or the credibility of a witness, we will affirm unless the Commission's determination is against the overwhelming weight of the evidence, for a determination that is against the overwhelming weight of the evidence is, by definition, not supported by competent and sufficient evidence. *Cardwell v. Treasurer*, 249 S.W.3d 902, 906 (Mo.App. E.D. 2008). We review the findings of the Commission, but when the Commission adopts or affirms the findings of the Division, we review the Division's findings as if the Commission had made them. *Id.*

### Legal Analysis

Tombaugh argues that the Commission erred in denying him total and permanent disability in that its conclusion that "Koprivica's assessment of Tombaugh's permanent total disability includes the cardiac condition" was not based on substantial and competent evidence because Koprivica testified that, even excluding the cardiac condition, Tombaugh is totally disabled. We hold that the record is insufficiently developed on this point to determine whether the Commission erred.

Section 287.220.1 sets out the law governing when the second injury fund is liable. It provides for fund liability if the preexisting disability and the combined effect of it and the new injury are each of such seriousness that they are a hindrance or obstacle to employment and "if a body as a whole injury, equals a minimum of fifty weeks of compensation or, if a major extremity injury only, equals a minimum of fifteen percent permanent partial disability." Where the statute applies, the employer is liable only for the amount of disability caused by the current injury, and the fund is liable in the amount of the increase in disability caused by the synergistic effect of the two injuries.

*Pierson v. Treasurer*, 126 S.W.3d 386, 388–89 (Mo. banc 2004) (citation and footnote

---

**2.** Statutory citations are to RSMo 2000, as updated through the 2010 cumulative supplement.

omitted). "To be entitled to permanent total disability benefits, the claimant 'must prove that the [workplace] injury, combined with his pre-existing permanent partial disabilities, result in permanent total disability.' " *Michael v. Treasurer,* 334 S.W.3d 654, 663 (Mo.App. S.D.2011).

 The evaluation of medical testimony concerning a claimant's disability is within the peculiar expertise of the Commission, and, as such, the Commission is free to disbelieve the testimony of the claimant's medical expert. *Bond v. Site Line Surveying,* 322 S.W.3d 165, 171 (Mo. App. W.D.2010); *Cardwell,* 249 S.W.3d at 907–08. However, if the record is silent as to whether the Commission actually made the determination to disbelieve an expert medical witness with regard to a medical issue, the Commission may not *arbitrarily* disregard the *uncontradicted, unimpeached,* and *undisputed* testimony of that witness. *Bond,* 322 S.W.3d at 171; *Cardwell,* 249 S.W.3d at 907–08. When the Commission's award appears to reject a medical finding without an explanation, we may remand for a clarification as to the basis of the rejection. *Garibay v. Treasurer,* 930 S.W.2d 57, 61 (Mo.App. E.D. 1996).

 Although the Commission expressly relies on Koprivica's medical opinion in determining the degree of Tombaugh's disability, the Commission's finding that a claimant is not totally and permanently disabled is not exclusively a medical question. *See Crum v. Sachs Elec.,* 769 S.W.2d 131, 136 (Mo.App. W.D. 1989). "The test for permanent total disability is whether, given the claimant's *total* situation and condition, he is competent to compete in the open labor market." *Id.* (emphasis added). Thus, the Commission, in arriving at its ultimate conclusion as to the degree of a claimant's disability, need not rely exclusively on the testimony of medical experts and

is not bound by the percentage of disability ratings expressed by those experts; rather, it may consider all the evidence, including lay testimony and reasonable inferences that can be drawn from lay testimony. *Pavia v. Smitty's Supermarket,* 118 S.W.3d 228, 239 (Mo.App. S.D. 2003).

Here, it is not clear whether the Commission rejected Koprivica's final statement—in which he concluded that Tombaugh was totally disabled even excluding the heart condition—or whether it simply overlooked it. In fact, the Commission did not mention Koprivica's final statement at all. It is possible that the Commission found that Koprivica's report and his initial testimony were credible but that his final statement was not. From our review of the record, however, it seems as likely that the Commission failed to consider Koprivica's final statement as opposed to rejecting it as not credible.

It is also unclear whether the Commission's ultimate conclusion—that, absent the heart condition, Tombaugh's preexisting disabilities in combination with his work-related injury resulted in only a partial disability attributable to the Fund—was based on any non-medical considerations. Even absent contrary medical evidence, the Commission is not required to accept Koprivica's ultimate conclusion that Tombaugh is totally disabled. Such is the case because the question of disability is not solely a medical question; rather, the Commission is required to reach its decision based on *all* the evidence. *Pavia,* 118 S.W.3d at 239; *Crum,* 769 S.W.2d at 136. However, the Commission did not cite any non-medical basis for its conclusion that Tombaugh is only partially disabled when the heart condition is taken out of the calculus. The Commission could have found Koprivica to be credible on medical questions but found Tombaugh to be only

partially disabled due to non-medical considerations. But it is not clear from the record that that was the basis for the Commission's decision.

Given the unique facts of this case, the appropriate posture is to remand for clarification. *See Garibay,* 930 S.W.2d at 61 (remanding for a finding as to whether and what extent the Commission found the medical evidence to lack credibility). Absent a clarification of the factual issues noted above, an outright reversal or affirmance would require us to make assumptions about the Commission's findings of facts, and, in this case, the vague and arguably contradictory nature of the record prevents us from making those assumptions with confidence. We therefore find it inadvisable to decide the merits of this case without knowing: (1) whether the Commission found Koprivica's final statement to lack credibility; and (2) whether its denial of total, permanent disability was based on any non-medical considerations.

Accordingly, point one of Tombaugh's appeal is granted to the extent stated above. Depending on what the Commission finds on remand, point two may be rendered moot, and we therefore need not address it.

### Conclusion

In the context of this case, we cannot properly affirm or overturn the denial of benefits without clarifying the issues discussed above. Accordingly, we reverse and remand with instructions for the Commission, in reaching its decision, to clarify whether it made a credibility determination with regard to Koprivica's conclusion that Tombaugh is totally and permanently disabled even excluding the heart condition. Further, the Commission should state whether its decision was based on any non-medical factors. Reversed and remanded.

VICTOR C. HOWARD, Presiding Judge, and ALOK AHUJA, Judge, concur.