Selma LEWIS, Appellant,

v.

## KANSAS UNIVERSITY MEDICAL CENTER, Respondent,

Treasurer of the State of Missouri–Custodian of the Second Injury Fund, Respondent.

No. WD 73817.

Missouri Court of Appeals, Western District.

Dec. 6, 2011.

Thomas Hill, Overland Park, KS, for Appellant.

Joseph McMillan, Lenexa, KS, for Respondent, KS University Medical Center.

Benita Seliga, Kansas City, MO, for Respondent, Treasurer of the State of MO.

Before ALOK AHUJA, P.J., THOMAS H. NEWTON, and JAMES EDWARD WELSH, JJ.

JAMES EDWARD WELSH, Judge.

Selma Lewis appeals the Labor and Industrial Relations Commission's decision denying her claim against the Second Injury Fund for permanent total disability benefits.[1] The Commission found that

---

**1.** The Commission did find that Kansas University Medical Center was liable to Lewis for 15 percent permanent partial disability to the body as a whole or $19,765.20 and that the Second Injury Fund was liable for permanent partial disability benefits in the amount of

Lewis was not permanently and totally disabled because she was not unemployable in the labor market based upon the work accident and her preexisting disabilities and because her inability to be employed was due to a subsequent deterioration of her preexisting conditions, which occurred after the work accident in this case. Lewis contends that the Commission's decision was not supported by substantial and competent evidence. In particular, she asserts that under the case law of *Kuykendall v. Gates Rubber Company*, 207 S.W.3d 694 (Mo.App.2006), and *Garibay v. Treasurer of Missouri*, 930 S.W.2d 57 (Mo.App.1996), the Commission could not arbitrarily cast aside or disregard the undisputed testimony of the vocational expert that Lewis was unemployable in the open labor market. We affirm.

Lewis began working for Kansas University Medical Center (KU Medical) in August 2001 as a health care technician. On October 6, 2001, Lewis was working at KU Medical, and, while assisting a co-worker move a patient up in bed, Lewis felt a pop in her back. On October 11, 2001, Lewis began experiencing sharp pains and was admitted to the hospital at KU Medical. Due to Lewis's ongoing complaints about lower back pain, Lewis underwent an MRI of the thoracic and lumbar spine. The MRI of the lumbar region revealed "in situ desiccatory change" at L4/5 with a central disc bulge contacting the L5 nerve roots. Lewis was released from the hospital on October 16, 2001, with a diagnosis of lumbar and thoracic sprains.

Lewis returned to work on October 29, 2001. On May 29, 2002, Dr. Edward Wilson released Lewis from his care saying that she reached maximum medical improvement. Wilson stated at that time that Lewis "may continue employment,

with avoidance of loads of greater than 20 pounds and repetitive bending or twisting activities." Wilson also provided Lewis with a two percent permanent partial impairment rating and diagnosed her with having a lumbar strain and nerve root irritation. Lewis continued to work with those restrictions entering data, performing secretarial work, and monitoring suicidal patients until her employment with KU Medical ended on February 6, 2003. Lewis never returned to any type of employment after February 6, 2003.

Lewis filed a claim for compensation against the Second Injury Fund for the October 6, 2001 work injury. Lewis alleged that her preexisting disabilities combined with the alleged October 6, 2001 injury rendered her permanently and totally disabled. An administrative law judge (ALJ) held a hearing on this matter on August 25, 2010.

Lewis introduced into evidence numerous medical records outlining her alleged work injuries and her preexisting diabetic and coronary artery diseases. Lewis presented the deposition testimony of Dr. P. Brent Koprivica and Mary Titterington, a vocational rehabilitation counselor. In her deposition, Mary Titterington concluded that Lewis was permanently and totally disabled and was not employable in the open labor market.

Although the parties agreed that Lewis sustained a job-related accident on October 6, 2001, the ALJ found that Lewis was not rendered permanently and totally disabled as a result of the October 6, 2001 accident even when considered in combination with her preexisting disabilities. The ALJ disagreed with Lewis's vocational expert, Mary Titterington, who found Lewis unemployable in the open labor market

$4,611.88. Lewis does not appeal from these

determinations.

based on Lewis's work accident and Lewis's coronary artery disease and diabetes. The ALJ found that Lewis's diabetic condition, as it preexisted the October 6, 2001 work accident, was "a hindrance or obstacle to her employment" and noted that Lewis had missed work due to complications of her diabetic condition. The ALJ found, however, that Lewis's coronary artery disease, as it preexisted the October 6, 2001 work accident, was not "a hindrance or obstacle to performing her job duties" and noted that Lewis denied having hindrances or obstacles to performing her job duties after a stent placement. The ALJ concluded that, based upon Lewis's diabetic condition alone as it existed prior to October 6, 2001, Lewis sustained 20% permanent partial disability body as a whole.

Further, the ALJ found that Lewis was not unemployable in the open labor market based upon the October 6, 2001 work accident and preexisting diabetes. The ALJ found that Lewis worked full-time in the open labor market beginning October 29, 2001, until February 6, 2003. The ALJ concluded that Lewis demonstrated that she could work sedentary positions by performing data entry, answering phones, and monitoring suicidal patients for almost a year and a half after the work accident. The ALJ found that the duties Lewis performed after her work accident demonstrated her ability to work in the open labor market.

Finally, the ALJ concluded that the medical records along with Lewis's testimony established that Lewis's physical condition deteriorated since October 6, 2001. The ALJ found that Lewis was hospitalized in 2004 due to diabetic complications, that she was hospitalized in 2005 due to pericarditis, and that she had a neck condition that appeared to have deteriorated since 2002 to the extent that a surgeon offered a cervical fusion. Therefore, the ALJ said that Lewis's unemployability appeared to be from the subsequent deterioration of her conditions and not based upon the work accident and her preexisting conditions as they existed at the time of the work accident. The ALJ, therefore, denied Lewis's claim for permanent and total disability benefits against the Second Injury Fund.

Lewis filed an application for review with the Commission. The Commission affirmed the ALJ's award and decision and attached and incorporated by reference the ALJ's award and decision. Lewis appeals.

 Our review of this matter is governed by section 287.495.1, RSMo 2000, which provides, in relevant part:

Upon appeal no additional evidence shall be heard and, in the absence of fraud, the findings of fact made by the commission within its powers shall be conclusive and binding. The court, on appeal, shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other:

(1) That the commission acted without or in excess of its powers;

(2) That the award was procured by fraud;

(3) That the facts found by the commission do not support the award;

(4) That there was not sufficient competent evidence in the record to warrant the making of the award.

Where the Commission affirms and adopts the administrative law judge's findings, we review the decision of the administrative law judge as adopted by the Commission. *Dunn v. Treas. of Mo. as Custodian of Second Injury Fund,* 272 S.W.3d 267, 271 (Mo.App.2008). This court reviews the Commission's award to determine whether

it is "supported by competent and substantial evidence upon the whole record." Mo. Const. art. V, sec. 18. An award is supported by competent and substantial evidence unless it is against the overwhelming weight of the evidence. *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 222–23 (Mo. banc 2003).

■ In a claim for permanent total disability, "[t]he Second Injury Fund compensates injured workers who are permanently and totally disabled by a combination of past disabilities and a primary work injury." *Concepcion v. Lear Corp.*, 173 S.W.3d 368, 371 (Mo.App.2005). Section 287.020.6, RSMo Cum Supp.2010, defines the term "total disability" as the "inability to return to any employment and not merely [an] inability to return to the employment in which the employee was engaged at the time of the accident." The test for permanent total disability is whether the worker is able to compete in the open labor market. *ABB Power T & D Co. v. Kempker*, 236 S.W.3d 43, 48 (Mo. App.2007). "Total disability means the inability to return to any reasonable or normal employment, it does not require that the employee be completely inactive or inert." *Brown v. Treas. of Mo.*, 795 S.W.2d 479, 483 (Mo.App.1990). " 'Any employment' means any reasonable or normal employment or occupation." *Mell v. Biebel Bros., Inc.*, 247 S.W.3d 26, 29 (Mo. App.2008). "The critical question is whether, in the ordinary course of business, any employer reasonably would be expected to hire the injured worker, given his present physical condition." *ABB Power*, 236 S.W.3d at 48; *see also Molder v. Mo. State Treas.*, 342 S.W.3d 406, 411 (Mo.App.2011). Lewis has the burden to establish permanent total disability by introducing evidence to prove her claim. *Clark v. Harts Auto Repair*, 274 S.W.3d 612, 616 (Mo.App.2009).

■ In reaching its decision that Lewis was not permanently and totally disabled, the Commission disagreed with Lewis's vocational expert, Mary Titterington, who found Lewis unemployable in the open labor market based on Lewis's work accident and Lewis's coronary artery disease and diabetes. Lewis contends that the Commission's rejection of Titterington's testimony was in contravention of *Kuykendall v. Gates Rubber Company*, 207 S.W.3d 694 (Mo.App.2006), and *Garibay v. Treasurer of Missouri*, 930 S.W.2d 57 (Mo. App.1996). We disagree.

In *Kuykendall*, when discussing the Commission's rejection of medical testimony that was not expressly contradicted by any credible, expert witness, this court's Southern District said:

> [T]he Commission " 'may not arbitrarily disregard and ignore competent, substantial and undisputed evidence of witnesses who are not shown by the record to have been impeached, and the Commission may not base their finding upon conjecture or their own mere personal opinion unsupported by sufficient competent evidence.' " *Houston* [*v. Roadway Express, Inc.*, 133 S.W.3d 173, 179–80 (Mo.App.2004) ] (quoting *Corp.* [*v. Joplin Cement Co.*, 337 S.W.2d 252, 258 (Mo. banc 1960) ] ). "The [C]ommission cannot find there is no causation if the uncontroverted medical evidence is otherwise." *Hayes v. Compton Ridge Campground, Inc.*, 135 S.W.3d 465, 470 (Mo.App.2004).

*Kuykendall*, 207 S.W.3d at 712. Further, in *Garibay*, when discussing the Commission's rejection of the credibility of all the medical experts in the case, this court's Eastern District said,

> While we recognize that the Commission does not have "to accept competent substantial evidence as true, the Commission cannot, nevertheless, arbitrarily

cast aside competent, substantial, and undisputed testimony of witnesses who are not shown by the record to have been impeached." *Pippin v. St. Joe Minerals Corporation,* 799 S.W.2d 898, 909 concurrence (Mo.App.S.D.1990). *Garibay,* 930 S.W.2d at 61; *see also Tombaugh v. Treas. of State of Mo.,* 347 S.W.3d 670, 675 (Mo.App.2011).

In this case, the Commission did not arbitrarily cast aside Titterington's testimony and did not base its findings upon conjecture or upon its own personal opinion unsupported by sufficient competent evidence in contravention of *Kuykendall* and *Garibay.* The Commission was free to reject even uncontradicted and unimpeached testimony if reference to the Commission's award shows that the Commission's disbelief of Titterington was the basis for the award. *Houston v. Roadway Express, Inc.,* 133 S.W.3d 173, 179 (Mo. App.2004); *see also Alexander v. D.L. Sitton Motor Lines,* 851 S.W.2d 525, 527 (Mo. banc 1993), *superseded by statute on other ground as stated in Dunn,* 272 S.W.3d at 273. Although Lewis asserts that no explanation was given by the Commission as to why Titterington's testimony was disbelieved, the Commission specifically set forth its reasoning as to why Titterington's testimony was disbelieved. Specifically, the Commission concluded:

> Although I disagree [Lewis] is permanently totally disabled, I find [Lewis's] diabetic condition as it preexisted October 6, 2001, was a hindrance or obstacle to her employment. [Lewis] missed work due to complications of her diabetic condition. Due to her insulin dependence, one hospitalization included placing an insulin pump and the other to correct hemorrhages of her eyes.

> However, I do not find the coronary artery disease, although a preexisting condition, to be a hindrance or obstacle to performing her job duties prior to October 6, 2001. Indeed, [Lewis] denied having hindrances or obstacles to performing her job duties after a stint placement. Dr. Koprivica found [Lewis] sustained 50% permanent partial disability body as a whole due to the coronary artery disease and diabetes. However, I find, based on [Lewis's] diabetic condition alone as it existed prior to October 6, 2001, [Lewis] sustained 20% permanent partial disability body as a whole.

> Lastly, I do not find [Lewis] unemployable in the open labor market based on the last accident and preexisting diabetes. Indeed, [Lewis] worked full-time in the open labor market beginning October 29, 2001, until February 6, 2003. [Lewis] demonstrated she could work sedentary positions for almost 1 1/2 years. In this case, I do not find performing data entry, answering phones or monitoring suicidal patients to be such accommodated work duties as to render her unemployable. Instead, I find those positions she performed to demonstrate her ability to work in the open labor market.

> Furthermore, medical records, along with [Lewis's] testimony, reveal [Lewis's] physical condition deteriorated since October 6, 2001. [Lewis] was hospitalized in 2004 due to diabetic complications. In 2005, [Lewis] was hospitalized for pericarditis. Since 2002, [Lewis's] neck condition appears to have deteriorated to the extent a surgeon offered a cervical fusion. Therefore, I do not find [Lewis] to be permanently totally disabled based on a combination of back strains and preexisting diabetes, rather, her unemployablility appears to be from subsequent deterioration.

Lewis does not contest any of these conclusions made by the Commission. She

merely states that, because Titterington said that Lewis was not employable in the open market and because Titterington was the only vocational witness to testify, the Commission was obligated to accept those conclusions.

The question whether a claimant is totally and permanently disabled is not exclusively a medical question. *Crum v. Sachs Elec.*, 769 S.W.2d 131, 136 (Mo.App. 1989), *overruled in part by Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220 (Mo. banc 2003). Although Dr. P. Brent Koprivica found that Lewis sustained a 50 percent permanent partial disability to the body as a whole due to her diabetes and coronary artery disease, the Commission found that, based upon Lewis's diabetic condition alone as it existed prior to the work accident, Lewis sustained a 20 percent permanent partial disability to the body as a whole due to her diabetes. The Commission, in arriving at its ultimate conclusion as to the degree of a claimant's disability, need not rely exclusively on the testimony of medical experts; rather, it may consider all the evidence and the reasonable inferences drawn from that evidence. *Tombaugh*, 347 S.W.3d at 675; *Pavia v. Smitty's Supermarket*, 118 S.W.3d 228, 239 (Mo.App.2003). "The Commission is not bound by the expert's exact percentages and is free to find a disability rating higher or lower than that expressed in medical testimony." *Pavia*, 118 S.W.3d at 234. "The extent and percentage of disability is a finding of fact within the special province of the Industrial Commission." *Id.* (internal quotation marks and citations omitted).

The Commission found that, based upon the evidence presented, that the combination of Lewis's work accident on October 6, 2001, and her preexisting coronary artery disease and diabetes did not render her totally and permanently disabled and unemployable on the open market. As to the preexisting coronary artery disease, Lewis said in her deposition taken in November 2004 that she was diagnosed with coronary artery disease in 2001 and that she had a cardiac catheterization with a placement of a stent in April 2001. Lewis said that she was not under any kind of restrictions because of the coronary artery disease and that the doctors had not advised her to refrain from any particular activities. Indeed, even at the hearing in August 2010, Lewis maintained that her heart was fine. Regarding Lewis's preexisting diabetic condition, the evidence established that she had been hospitalized for placement of her insulin pump and that she had had surgeries for her eyes prior to the October 6, 2001 work accident. The Commission set forth this evidence in its determination and concluded that Lewis was not permanently and totally disabled contrary to what Titterington found.

The Commission did find that Lewis's diabetic condition, as it preexisted the October 6, 2001 work accident, was a hindrance or obstacle to her employment. But, the evidence established, and Titterington acknowledged, that Lewis worked for almost a year and a half after the work accident at KU Medical performing data entry, answering telephones, and monitoring suicidal patients. In such a case, we may defer to the Commission's finding on a technical matter, such as the employability of an individual, which is within the Commission's expertise. *See Wright v. Sports Associated, Inc.*, 887 S.W.2d 596, 600 (Mo. banc 1994), *overruled in part by Hampton*, 121 S.W.3d at 220. " 'The test for permanent total disability is whether, given the claimants' *total* situation and condition, [s]he is competent to compete in the open labor market.' " *Tombaugh*, 347 S.W.3d at 675 (emphasis in the original and citation omitted). The Commission, therefore, "in arriving at its ultimate con-

clusion as to the degree of the claimant's disability ... may consider all the evidence, including lay testimony and reasonable inferences that can be drawn from that testimony." *Id.* (citing *Pavia*, 118 S.W.3d at 239). Obviously, the ability to perform some work is relevant to the Commission's total disability determination. *Cooper v. Med. Ctr. of Indep.*, 955 S.W.2d 570, 575 (Mo.App.1997), *overruled in part by Hampton*, 121 S.W.3d at 220. We acknowledge, however, that such is not dispositive because "a number of cases have recognized that a claimant can be totally disabled even if able to perform sporadic or light duty work." *Id.* In this case, however, we agree with the Commission that the duties performed by Lewis at KU Medical after her work accident demonstrated her ability to work in the open labor market despite her preexisting diabetic condition and the work accident. As the Commission found, "[Lewis] demonstrated she could work sedentary positions for almost 1 1/2 years."

■ Further, the record established that Lewis's preexisting conditions deteriorated in the years after the work accident. Lewis was hospitalized in 2004 for complications due to her diabetes. In 2005, she had a hypertensive crisis, and there was an even further progression of her coronary artery disease. She was also hospitalized in 2005 for pericarditis. To recover permanent disability compensation from the Second Injury Fund, Lewis had to prove that she had "a preexisting permanent

partial disability of such seriousness as to constitute a hindrance or obstacle to [her] employment or reemployment." *Lammert v. Vess Beverages, Inc.*, 968 S.W.2d 720, 724 (Mo.App.1998), *overruled in part by Hampton*, 121 S.W.3d at 220. "The preexisting disability necessary to trigger Second Injury Fund liability is permanent partial disability *existing at the time the work-related injury was sustained.*" *Id.* at 725 (emphasis added). "The Second Injury Fund is not responsible for progression of preexisting conditions or new conditions that develop after and unrelated to the work injury." *Id.*

In response to Commission's findings and conclusions about the deterioration of her preexisting conditions in the years after the work accident, Lewis merely states again that, under *Garibay*, the Commission could not arbitrarily cast aside or disregard Titterington's testimony.[2] As we previously discussed, the Commission's decision established that it disbelieved Titterington's testimony that Lewis was unemployable on the open market. *Houston*, 133 S.W.3d at 179. Further, Lewis contends that her exit from the work force was not because of subsequent deterioration of her preexisting condition but was due to KU Medical's inability to accommodate her restrictions. Total disability, however, is the "inability to return to any employment and not merely [an] inability to return to the employment in which the employee was engaged at the time of the

---

**2.** In her reply brief, Lewis also contends that Dr. Koprivica testified that Lewis's permanent and total disability arose from combining work injury with the disability from her diabetic condition, as it existed prior to October of 2001 without consideration of the progression of the diabetic disease. In Lewis's point relied on, however, she complains only about the Commission's disregarding Titterington's testimony and not Koprivica's testimony. " 'Issues not encompassed by the point relied

on and raised only in the argument portion of the brief are not preserved for review.' " *Cordes v. Williams*, 201 S.W.3d 122, 129 (Mo.App.2006) (citation omitted). "Moreover, '[a]ppellate courts are generally precluded from addressing assertions made for the first time in a reply brief because a respondent has no opportunity to address the argument.' " *Giles v. Riverside Transport, Inc.*, 266 S.W.3d 290, 298 (Mo.App.2008) (citation omitted).

accident." § 287.020.6. That KU Medical could no longer accommodate Lewis's work restrictions does not mean that no employer reasonably would be expected to hire Lewis given her present physical condition. *ABB Power,* 236 S.W.3d at 48; *Molder,* 342 S.W.3d at 411. Indeed, the Commission found that Lewis worked for almost a year and a half after the work accident at KU Medical performing data entry, answering telephones, and monitoring suicidal patients. The Commission found the tasks that Lewis performed after her work accident demonstrated her ability to work in the open labor market despite her preexisting diabetic condition and the work accident. Lewis's unemployability is due to the deterioration of her preexisting conditions since the October 6, 2001 work accident-and especially since she stopped working for KU Medical.

We conclude that the Commission's decision denying Lewis's claim against the Second Injury Fund for permanent total disability benefits was supported by substantial and competent evidence. The Commission did not arbitrarily cast aside or disregard Titterington's testimony that Lewis was unemployable in the open labor market, but instead the Commission based its decision upon competent and substantial evidence which indicated that Lewis was employable on the open market after the work accident and that it was a subsequent deterioration of her preexisting conditions in the years after the work accident that resulted in her unemployability.

We, therefore, affirm the Commission's decision denying Lewis's claim against the Second Injury Fund for permanent total disability benefits.

All concur.